**Arturo Lindo FUENTES, Plaintiff,**

v.

**SEA–LAND SERVICES INC.,**
**Defendant,**

and

**Republic of Guatemala and Asociacion Nacional Del Cafe,**
**Intervenor-Defendants.**

**No. 86 Civ. 2373 (KTD).**

United States District Court,
S.D. New York.

May 15, 1987.

Hill, Betts & Nash, New York City, for plaintiff; Kenneth Geller, of counsel.

Patton, Boggs & Blow, Washington, D.C., Stroock & Stroock & Lavan, New York City, for intervenor-defendants Republic of Guatemala and Asociacion Nacional del Cafe; David C. Todd, Jennifer A. Hillman, Washington, D.C., Brian M. Cogan, of counsel.

Beck, Halberg & Williamson, New York City, for defendant; Herbert B. Halberg, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

This case concerns which of several parties is entitled to a cargo of coffee presently being held in New Orleans, Louisiana. It falls within the jurisdiction of this court as an admiralty and maritime cause of action. 28 U.S.C. § 1333(1) (1982). Plaintiff moves for summary judgment and the intervenor-defendants cross-move for summary judgment. For the reasons discussed below, both plaintiff's motion and intervenor-defendants' cross-motion must be denied.

### FACTS

Plaintiff, Arturo Lindo Fuentes ("Fuentes"), resides in Costa Rico and is a coffee trader and general manager of Freston Enterprises ("Freston"), an international trading company incorporated in Panama. Defendant, Sea-Land Services, Inc. ("Sea-Land"), is an ocean carrier of goods for hire, incorporated in Delaware, with its principal place of business in New Jersey and a sales office in New York. On December 30, 1985, Fuentes contracted to

purchase F.O.B. Santo Tomas de Castilla, Guatemala ("Santo Tomas") 20,000 bags of Guatemalan coffee from a Panamanian trading company named Transwood, S.A. ("Transwood") for shipment to Hamburg, West Germany. Two conditions attached to the purchase contract: (1) the coffee was to be shipped by a steamship carrier selected by Fuentes; and (2) the coffee was to be paid for by a letter of credit opened with a bank in Panama. Fuentes chose Sea-Land as the carrier and on January 8, 1986 opened a letter of credit in favor of Transwood by Banque Nationale de Paris (Suisse), S.A. in Geneva, Switzerland (the "Geneva bank"). Payment was to be made through Banco Fiduciario de Panama, S.A. in Panama City, Panama (the "Panama bank") upon presentation of certain documents including the original negotiable bill of lading.

On January 24, 1986, Fuentes traveled to Guatemala to inspect the coffee and advised the Transwood representative who accompanied him that the coffee was acceptable. Transwood arranged with Sea-Land to have the coffee shipped from Santo Tomas to Hamburg via New Orleans. On February 9, 1986, Sea-Land issued its bill of lading number 154–723975 for a partial shipment of 3,402 bags of coffee. Sea-Land subsequently delivered the coffee to New Orleans for transfer to another Sea-Land vessel bound for Hamburg.

After the coffee departed Guatemala, a Transwood representative presented the documents required by the letter of credit to the Panama bank and received payment for the coffee. The documents were then forwarded to the Geneva bank, where the bill of lading was endorsed to the party in Hamburg where the coffee was to be delivered. That party subsequently endorsed the bill of lading to Fuentes. Fuentes presently holds the bill of lading.

On February 27, 1986, before the coffee was sent on to Hamburg, the General Director of the Guatemalan Customs Bureau wrote to Sea-Land requesting that it hold the coffee in New Orleans because it had been illegally exported and the Guatemalan government wanted to have it returned.

On March 7, 1986, Fuentes went to Sea-Land's New Orleans office, presented the properly endorsed bill of lading, offered to pay the freight charges owed, and demanded that the coffee be released to him. Sea-Land refused to release the coffee to Fuentes.

On March 19, 1986, Guatemalan Judge Napoleon Guiterrez Vargas wrote to Sea-Land to inform them that Fuentes and another individual were being criminally prosecuted for fraudulently exporting the coffee at issue from Guatemala. Judge Vargas also informed Sea-Land that in connection with the Fuentes prosecution, he had issued an order for the return of the coffee to Guatemala and requested that Sea-Land comply with that order. Subsequently, on April 1, 1986, Guatemala's Vice-Minister of Public Finance wrote to Sea-Land requesting that it return the coffee to Guatemala because it was illegally exported and was the subject of judicial proceedings there. Sea-Land has not complied with these requests and to date the coffee has been detained in a warehouse in New Orleans.

On March 20, 1986, Fuentes brought this cause of action seeking: either (1) that Sea-Land be ordered to deliver the coffee to Fuentes in Hamburg; or (2) that Fuentes be declared entitled to immediate possession of the coffee upon presentation of the original negotiable bill of lading; and (3) that Fuentes be awarded compensatory damages for Sea-Land's violations of Fuentes' rights, title and interest in the coffee; and (4) that Fuentes be awarded $1 million in punitive damages. Sea-Land counterclaimed: (1) for freight, storage, handling and other charges incurred in shipment and storage of the coffee; and (2) for interpleader of the Republic of Guatemala as a party defendant; and (3) for an order discharging Sea-Land from all liability except delivery of the coffee to the party adjudged entitled to it.

On June 30, 1986, the Republic of Guatemala and the Asociacion Nacional Del Cafe ("ANDC") were joined as intervenor-defendants to the cause of action. The ANDC is the organization responsible for implementing and enforcing Guatemala's

rights and duties under the export control system of the International Coffee Agreement (the "ICA"). The ICA regulates the import and export coffee trade of all parties to the agreement. The United States, West Germany, and Guatemala are all parties to the ICA. The United States Congress enacted enabling legislation for the agreement in 19 U.S.C. § 1356k (1982 & Supp.1985).

On July 11, 1986, Judge Vargas issued a final order subjecting the coffee to an embargo. He also sent letters rogatory to the United States District Court for the Eastern District of Louisiana, requesting that court to enforce the embargo and to turn the coffee over to the Consul General of Guatemala in New Orleans.

Fuentes moves for summary judgment on the ground that Guatemala and the ANDC wrongfully restrained the coffee's delivery. Fuentes seeks either: (1) an order that he owns the coffee and is entitled to immediate possession of it; or (2) should the coffee not be released, an order that Guatemala and the ANDC post security for potential damages to the coffee. Guatemala and the ANDC cross-move for summary judgment and seek either: (1) an order enforcing the Guatemalan decree that the coffee be turned over to the Guatemalan consulate in New Orleans; or (2) an order that the ICA requires the United States to return the coffee to Guatemala; or (3) an order dismissing the cause of action based on the doctrine of *forum non conveniens*. Sea-Land requests that the court award it the freight, storage, and handling costs incurred in shipping and storing the coffee.

## DISCUSSION

 A bill of lading for ocean carriage of goods serves several functions: as a receipt that the carrier has received goods for shipment; as a contract of carriage for those goods; and as documentary evidence of title to those goods. *Tokio Marine & Fire Ins. v. M/V L. Jalabert Bontang*, 624 F.Supp. 402, 407–8 n. 5 (S.D.N.Y.1985), *aff'd without opinion*, 800 F.2d 1128 (2d Cir.1986); *West India Indus. v. Tradex,*

*Tradex Petroleum Serv.,* 664 F.2d 946, 949 (5 Cir.1981). Fuentes presently holds the negotiable bill of lading issued by Sea-Land for the coffee shipment at issue. If Fuentes had simply accepted the negotiable bill of lading in good faith in the stream of commerce, he would be a holder in due course and would be entitled to summary judgment and immediate possession of the coffee. However, Fuentes was involved in the transaction before the bill of lading was even issued: he contracted to purchase the coffee, selected the steamship carrier, made arrangements for payment by letter of credit, and inspected the coffee in Guatemala. Subsequently, the bill of lading was endorsed to him. That endorsement does not by itself elevate him to the status of a holder in due course of a negotiable instrument. Therefore, Fuentes is simply a holder of the bill of lading and his claim to title must be reconciled with the claims of Guatemala and the ANDC. Significant questions of fact remain regarding those claims, including:

(1) Were the Guatemalan legal requirements for the export of coffee complied with?

(2) Were Freston, Fuentes, Transwood, and Transwood's representative registered to do business in Guatemala?

(3) Was Usicafe de Centro America, S.A. ("Usicafe") properly listed as the shipper/exporter on the bill of lading?

(4) Was the proper shipping permit document used, and did it include accurate numbers, stamps, signatures, and designations of where the coffee was originally purchased?

(5) Was the coffee shipped in bags marked with the country of origin, as required by the ICA, or in unmarked bags?

(6) Were the stamps required by the ICA affixed to the certificate of origin?

(7) Was an export license obtained from the Banco de Guatemala, and was a statement of foreign income submitted for the coffee shipment, as required by the ICA?

(8) Were the Guatemalan export, customs, and municipal taxes paid on the coffee shipment?

(9) Which party to the transaction was required to comply with those requirements?

(10) If those requirements were not complied with, are remedies available against the party responsible for that noncompliance?

Therefore, Fuentes is not entitled to a summary judgment of title to the coffee based solely on his possession of the negotiable bill of lading.

When Fuentes contracted to purchase the coffee from Transwood he obtained equitable title to it. That equitable title must also be reconciled with the claims of Guatemala and the ANDC. The questions of fact listed above regarding those claims also preclude summary judgment for Fuentes on the issue of title to the coffee.

■ Guatemala and the ANDC seek to enforce the Guatemalan court decree ordering an embargo and return of the coffee shipment. The Guatemalan court has no jurisdiction *in rem* over the coffee that it seeks to have returned from the United States. While application could be made to a court with jurisdiction over the coffee for its return to Guatemala, such application was not made in this case. Therefore the Guatemalan court decree that the coffee be turned over to the Guatemalan Consulate in New Orleans for return to Guatemala is not enforceable in this court.

Guatemala and the ANDC also seek an order that the ICA requires that the coffee be returned to Guatemala. The questions of fact regarding the claims to title to the coffee similarly preclude a summary judgment ordering the coffee's return to Guatemala based on the ICA.

■ Finally, Guatemala and the ANDC argue that Fuentes' cause of action should be dismissed based on the ground of *forum non conveniens*, since the case could most appropriately and conveniently be decided in Guatemala. Ordinarily, when determining a claim of *forum non conveniens*, a strong presumption favors the plaintiff's choice of forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). While this presumption applies with less force to a foreign plaintiff, a foreign plaintiff's choice of forum deserves deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981). The presumption favoring plaintiff's choice of forum must be balanced against a multifactor analysis of the litigants' private interests and of the public interest in applying the doctrine of *forum non conveniens*. Such private interest factors include:

all of the practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

*Gulf, supra*, 330 U.S. at 508, 67 S.Ct. at 843 (footnote omitted). Public interest factors include concerns of imposing cases on congested courts and jury duty on citizens that have no relation to the litigation, and for the local interest in having localized controversies decided where they occurred and by courts familiar with the law to be applied. *Id.*, at 508–509, 67 S.Ct. at 843.

■ Guatemala and the ANDC argue that the ease of access to sources of proof, the convenience of witnesses, and the application of foreign law in this case favor dismissal of the cause of action here for trial in Guatemala instead. While some witnesses and sources of proof relevant to this case may be found in Guatemala, intervenor-defendants here ignore the more compelling fact that the *res* at issue is located in the United States, and the Guatemalan court does not have jurisdiction over it. Thus, even *if* Fuentes took his case to the Guatemalan court system, he could not obtain an enforceable judgment of title to

the coffee there. In addition, the seizure of the coffee occurred in the United States by a United States Sea-Land office. Finally, the Court of Appeals for the Second Circuit has explicitly held that "the need to apply foreign law is not in itself a reason to apply the doctrine of *forum non conveniens.*" *Olympic Corp. v. Societe Generale,* 462 F.2d 376, 379 (2d Cir.1972). While proof of Guatemalan law is relevant to this action, United States law in implementing and enforcing the ICA will also be relevant and applicable. Therefore, I find that the balance of private and public interests in this case does not favor Guatemala and the ANDC, and Fuentes' choice of forum should not be disturbed. The cause of action will not be dismissed on the ground of *forum non conveniens.*

Because issues of fact remain regarding the issue of title to the coffee, I cannot yet determine whether an award of freight, storage, and handling costs is warranted in this case. I am also aware of Sea-Land's counterclaim for an order discharging it from all liability for the coffee except for delivery to the party adjudged entitled to it. Because Sea-Land may have been involved in the coffee's export from Guatemala, this order cannot be granted at the present time.

In sum, Fuentes' motion for summary judgment that he has title to the coffee is denied. Similarly, the motion for summary judgment by Guatemala and the ANDC is also denied. Decision on the other relief requested is reversed at this time. Because this dispute involves the relations between the United States and the government of Guatemala, the United States Department of State and Department of Justice are hereby invited to submit briefs as *amicus curiae* on the issue reserved and whether there are United States treaty obligations regarding coffee import and export under the ICA.

SO ORDERED.