**Arturo Lindo FUENTES, Plaintiff,**

v.

**SEA–LAND SERVICES, INC., Defendant,**

and

**Republic of Guatemala and Asociacion Nacional del Cafe, Intervenor–Defendants.**

86 Civ. 2373 (KTD).

United States District Court, S.D. New York.

July 6, 1988.

Hill, Betts & Nash, New York City, Kenneth Geller, of counsel, for plaintiff.

Patton, Boggs & Blow, Washington, D.C., David C. Todd, Jennifer A. Hillman, of counsel, and Stroock & Stroock & Lavan, New York City, Brian M. Cogan, of counsel, for intervenor-defendants Republic of Guatemala and Asociacion Nacional del Cafe.

Beck, Halberg & Williamson, New York City, Herbert B. Halberg, Michael S. Horwitz, of counsel, for defendant.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendant Sea–Land Services, Inc. ("Sea–Land") moves, pursuant to Fed.R. Civ.P. 56, for summary judgment against plaintiff Arturo Lindo Fuentes ("Fuentes") and intervenor–defendants Republic of Guatemala and Asociacion Nacional del Cafe. For the reasons discussed below, that motion is denied.

## FACTS

The factual background of this dispute is set forth in detail in my Memorandum and Order of May 15, 1987 in this action, and familiarity with it is assumed for purposes of this discussion. 665 F.Supp. 206.

Sea–Land now seeks a judgment which: (1) awards Sea–Land payment of its freight charges in the amount of $27,623.27; (2) awards Sea–Land payment of its discharge, surveying, handling, and storage charges in the amount of $15,329.10; and (3) permits the cargo of coffee at issue and presently held in storage in New Orleans to be sold to pay the aforesaid awards.

Sea–Land claims no title to the coffee at issue, but rather asserts a possessory maritime lien solely for payment of its expenses in shipping, handling, and storing the coffee pursuant to section 7–307(1) of the Uniform Commercial Code. That section provides in relevant part that:

> [a] carrier has a lien on the goods covered by a bill of lading for charges subsequent to the date of its receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law.

N.Y.U.C.C.Law § 7–307(1) (McKinney 1964). Sea–Land justifies the coffee's detention in New Orleans pursuant to the "restraint of princes" provision of the Carriage of Goods by Sea Act ("COGSA") and the "government orders" provision of the Bill of Lading for the coffee. The "restraint of princes" provision of COGSA states in relevant part that:

> [n]either the carrier nor the ship shall be responsible for loss or damage arising or resulting from ... [a]rrest or restraint of princes, rulers, or people, or seizure under legal process.

46 U.S.C.App. § 1304(2)(g) (1985). The "government orders" provision of the Bill of Lading for the coffee states that the:

> Carrier or the master shall have liberty to comply with any orders, directives, regulations, requests or suggestions given by or received from the government of any nation or by any person purporting to act with the authority of such government. Any disposition of the goods pursuant to this clause shall con-

stitute completion of the contract of carriage by Carrier, and the goods thereafter shall be solely at their own risk and expenses.

Defendant's Memorandum of Law ("Def. Memo.") at 3. Sea–Land argues that because its

"charges constitute possessory liens it is appropriate to satisfy these liens out of the cargo itself by the sale of the cargo.... [S]ale of the cargo further has the beneficial effect of eliminating continuing storage charges and avoiding possible deterioration of the quality of the coffee during the period required to litigate this action."

Def.Memo. at 10. Sea–Land claims that upon payment of its charges, it stands only as a stakeholder awaiting resolution of the issue of title to the coffee, and offers to pay the balance of the proceeds into the registry of the court to be held in escrow. Finally, Sea–Land asserts that there are no genuine issues of material fact presented by its motion, and that the sole legal issue to be determined is whether the coffee's detention pursuant to paragraph 5 of the Bill of Lading is consistent with COGSA.

In response, Fuentes asserts that: (1) selling the coffee now would cause him substantial economic harm because the price of coffee has declined since he purchased it; (2) that although Sea–Land is entitled to payment from him for shipping the coffee, determination of the amount of that payment is premature until the ultimate determination of entitlement to the coffee; (3) the intervenor-defendants are responsible to pay for the coffee's storage and handling while their claims are litigated because the coffee was seized at their request; (4) paragraph 5 of the Bill of Lading overreaches section 1304 of COGSA, and is therefore void under paragraph 1 of the Bill of Lading, which provides in part that:

[i]f any term of this Bill of Lading be repugnant to the Carriage of Goods by Sea Act of the United States or any other law compulsorily applicable, such term only shall be void to that extent and no further.

Plaintiff's Memorandum of Law in Opposition to Defendants' [sic] Motion for Summary Judgment at 6; and (5) COGSA's "restraint of princes" provision does not justify the coffee's detention because the vessel and coffee at issue were never physically subject to Guatemala's control or threatened by its acts.

Intervenor-defendants Republic of Guatemala and Asociacion Nacional del Cafe have submitted no papers in response to Sea–Land's motion.

In my last Memorandum & Order in this action, I stated that:

[b]ecause issues of fact remain regarding the issue of title to the coffee, I cannot yet determine whether an award of freight, storage, and handling costs is warranted in this case. I am also aware of Sea–Land's counterclaim for an order discharging it from all liability for the coffee except for delivery to the party adjudged entitled to it. Because Sea–Land may have been involved in the coffee's export from Guatemala, this order cannot be granted at the present time.

Memorandum & Order of May 15, 1987 at 13. There is no dispute that Sea–Land shipped the coffee at issue from Santo Tomas, Guatemala to New Orleans, Louisiana. Defendant's Rule 3(G) Statement at ¶ 2. However, Sea–Land has not established that it is completely exempt from any responsibility for the coffee's allegedly unlawful export from Guatemala. In effect, Sea–Land now attempts to obtain judicial determination that it should be paid for its shipping, handling, and storage costs. Such a determination necessarily entails a finding that Sea–Land was totally innocent of any wrongdoing involving the coffee's export. As I stated in my last Memorandum & Order, I cannot make that finding at this juncture. Sea–Land's requested preference must therefore be denied.

Once again, I must point out that because this dispute involves the relations between the United States and the government of Guatemala, the United States Department of State and Department of Justice are hereby invited to submit briefs as *amicus curiae* on the issues reserved and

on whether there are United States treaty obligations regarding coffee import and export under the International Coffee Agreement.

SO ORDERED.