Burnie A. Higginbotham, Jr., brought this action against Airlines Reporting Corporation ("ARC") to recover $60,000 received by ARC through a letter of credit. The trial court held, among other things, that Higginbotham was the "real party in interest" and was entitled to bring this action. The trial court further held that Higginbotham's standing could be based on a "third-party beneficiary" theory or on a theory that he was the "true account party." The trial court then entered a judgment in favor of Higginbotham for $60,000. ARC appealed.
The dispositive issue on appeal is whether Higginbotham had standing to bring an action against ARC. *Page 953 
ARC is a nonprofit corporation that administers sales by travel agencies of airline tickets and payment to the airlines for tickets sold by the agencies. ARC accredits travel agencies, issues plates for validation purposes, and issues airline ticket stock to accredited agencies.
In 1988, ARC entered into an agent reporting agreement with Travel Management, Inc. ("TMI"). TMI was required to maintain a letter of credit in favor of ARC to protect ARC in the event that TMI failed to remit to ARC the airline carrier proceeds. Pursuant to the parties' agreement, TMI posted on June 13, 1988, an "Irrevocable Letter of Credit" in favor of ARC in the amount of $20,000.
In 1989, Higginbotham met the principals of TMI and began to lend it money. Higginbotham was not an officer, director, employee, or shareholder of TMI. In the fall of 1989, TMI's business had increased to the point where ARC required TMI to increase the amount of the letter of credit from $20,000 to $60,000. TMI asked Higginbotham to assist it in obtaining the increase in the amount of the letter of credit drawn on behalf of TMI and in favor of ARC. Higginbotham contacted his banker at Central State Bank ("bank") and arranged for the bank to issue the letter of credit. Higginbotham posted no collateral in favor of the bank to secure the issuance of the letter of credit and signed no note with the bank. Rather, Higginbotham orally promised the bank that he would stand behind the letter of credit. No consideration passed between the bank and Higginbotham in connection with the bank's issuance of the letter of credit, and no consideration passed between TMI and Higginbotham in connection with Higginbotham's assistance in the procurement of the letter of credit. Higginbotham stated that TMI told him that there would be no problem with the letter of credit because, if it were ever called, it would be backed up by TMI's outstanding receivables. ARC was not aware of any of Higginbotham's dealing with TMI or with the bank. TMI was named as the sole account party on the letter of credit, and ARC was named as the sole beneficiary.
In 1990, TMI sold carrier tickets, collected the proceeds, and failed to remit the proceeds to ARC. ARC terminated the agreement with TMI and drew upon the letter of credit that had been issued on behalf of TMI, and in favor of ARC, by the bank. After the bank received ARC's draw request, but before it honored the draw, Higginbotham wrote the bank and ARC, demanding that the bank refuse to honor ARC's draw.
In response to Higginbotham's letter, the bank filed an interpleader action, contending that it was faced with conflicting claims as to the funds available under the letter of credit. The bank sued, as potential claimants to the funds, ARC, TMI, and Higginbotham. Higginbotham contended that ARC should not be entitled to draw on the letter of credit because he says that ARC's contracts with TMI were void and unenforceable. Specifically, he argues that ARC was a foreign corporation that had failed to qualify to conduct business within the state of Alabama and, therefore, pursuant to the "door closing statutes,"[1] could not use the Alabama court to enforce its contracts. ARC responded, contending that Higginbotham had no standing to sue because he was not a party to the contract between ARC and TMI. Additionally, ARC contended that its contracts with TMI were not void and unenforceable because, it says, (1) its activities were interstate in nature and it was, therefore, not required to qualify to do business in Alabama; and (2) the "door closing" statutes are to be used as a defense and are, therefore, inapplicable here because ARC had brought no action to enforce a contract in Alabama.
The interpleader action was dismissed upon the motion of ARC, and ARC was paid $60,000 by the bank under its draw on the irrevocable letter of credit. Higginbotham then proceeded against ARC, claiming breach of contract, embezzlement, and a constructive trust. As noted above, the trial *Page 954 
court entered a judgment in favor of Higginbotham for $60,000.
It is well settled that one that is not a party to, or in privity with, a contract cannot sue for its breach. Twine v.Liberty National Life Ins. Co., 294 Ala. 43, 311 So.2d 299
(1975). Here, ARC and TMI entered into a contract in 1988. Their intentions were clearly set forth in their contract, and ARC had no knowledge of Higginbotham. ARC learned of Higginbotham's connection with TMI only after ARC had made a draw almost one year after the issuance of a letter of credit. ARC has never had any connection with Higginbotham as a creditor of, or as an investor in, TMI. Higginbotham had executed no guaranty in favor of ARC with respect to TMI's contractual obligations to ARC. In fact, TMI formed no relationship with Higginbotham until after the underlying contract with ARC was in place.
We recognize that under Alabama law a direct third-party beneficiary may sue on the contract. State Farm Fire Cas. Co.v. Green, 624 So.2d 538 (Ala. 1993). However, the party claiming to be a third-party beneficiary of a contract must establish that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon the third party.Weathers Auto Glass, Inc. v. Alfa Mutual Ins. Co.,619 So.2d 1328 (Ala. 1993).
The record makes it clear that Higginbotham was not an intended (or even an incidental) beneficiary under any contract in this case. Higginbotham was a stranger to the contract between ARC and TMI and cannot complain of any alleged breach of that contract.
As concerns the $60,000 "Irrevocable Letter of Credit," we point out that a letter of credit is a distinct transaction between the issuer and the beneficiary and that the issuer's obligation under the letter of credit is independent of the underlying transaction unless the letter of credit expressly incorporates that transaction. Airline Reporting Corp. v. FirstNational Bank of Holly Hill, 832 F.2d 823 (4th Cir. 1987). The issuer's duty to pay arises exclusively from the terms of the credit, with no defenses beyond those terms; its liability rests upon whether the beneficiary has complied with the terms of the credit. An issuer's duty to its customer extends only to ascertaining that the documents presented by the beneficiary appear to be regular on their face. Airline Reporting, supra.
The letter of credit, on its face, makes it clear that the bank is the issuer and that ARC is the beneficiary. ARC required TMI to post a letter of credit as a prerequisite to doing business with ARC. ARC had no dealings with, or knowledge of, Higginbotham concerning this letter of credit. In fact, the document stated that TMI had requested the issuance of the letter of credit. As noted above, it was only after ARC had made a demand on the letter of credit that it learned of Higginbotham.
It is unfortunate that Higginbotham had to pay the bank $60,000 because of a default by TMI. However, it was Higginbotham who orally promised the bank that he would be personally liable if TMI defaulted and ARC drew on the letter of credit. Nevertheless, we hold that the trial court erred in entering a judgment for Higginbotham, because he has no standing to sue ARC. In other words, there was no legal theory, cause of action, or basis for the trial court to award Higginbotham a $60,000 judgment against ARC.
In view of our holding that Higginbotham lacked standing to bring this action, we need not determine whether ARC's activities were interstate in nature or whether Alabama's "door closing" statutes are applicable in this case.
The trial court's judgment is due to be reversed.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES and STEAGALL, JJ., concur.
MADDOX, J., concurs in the result.
[1] Section 10-2A-247, Ala. Code 1975, provides that all contracts entered into in Alabama by foreign corporations that have not obtained a certificate to transact business here will be held void if the foreign corporation brings an action to enforce its contract. See also § 40-14-4. *Page 955