The **FIRST STATE BANK**, Ketchum, Oklahoma, Appellee,

v.

**DIAMOND PLASTICS CORPORATION**, Appellant.

No. 76571.

Supreme Court of Oklahoma.

March 14, 1995.

As Corrected March 16 and 21, 1995.

---

Ronald N. Ricketts, Gable & Gotwals, Inc., Tulsa, Ronald E. Fry, Bailey & Fry, Vinita, for appellee.

Mark K. Blongewicz, Robert G. Cass, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, for appellant.

SIMMS, Justice.

Diamond Plastics Corporation (Diamond Plastics), defendant below, appeals the summary judgment entered by the trial court in favor of The First State Bank, Ketchum, Oklahoma, (Bank), appellee, on Bank's declaratory action regarding liability on a letter of credit. Diamond Plastics claims Bank is liable for payment under the letter of credit as well as damages for wrongful dishonor of the credit. Both parties filed summary judgment motions, and the trial court found in favor of Bank on both. The Court of Appeals reversed summary judgment for Bank and remanded with directions for the trial court to enter judgment for Diamond Plastics.

Certiorari was granted to consider the first impression question regarding Bank's dishonor of the letter of credit. We find that although the draft submitted by Diamond Plastics did not strictly conform to the letter of credit, material issues of fact regarding estoppel of Bank from asserting the strict compliance rule due to previously honoring nonconforming drafts must be resolved. We therefore hold the trial court erred in granting summary judgment to Bank. The facts, substantially undisputed, follow.[1]

## FACTS

In order to sell its products to Vic Klingenberg d/b/a Arkansas Irrigation and Waterworks, Diamond Plastics agreed to payment via a letter of credit arrangement with the Bank of which Klingenberg was a customer. A letter of credit is a contractual arrangement whereby the issuer, typically a bank,

---

1. Certain facts were disputed, but they were not material to the resolution of this controversy.

For instance, see fn. 3 regarding the facsimile transmissions.

agrees to pay to a third party, the beneficiary, an amount of money up to the letter of credit limit on behalf of the bank's customer. The arrangement facilitates the commercial transaction between the customer and the beneficiary and assures the beneficiary that payment will be received upon proper demand.

The Bank issued two irrevocable letters of credit to Diamond Plastics, one on June 1, 1989, for $32,000.00 and one on June 8, 1989, for $15,000.00. The June 1 letter of credit was typewritten on the Bank's letter head and signed by Don J. Thorpe, Executive Vice–President of the Bank at that time. It provides, in pertinent part:

> "We hereby agree to accept and pay at maturity any draft or draft[sic] on us, at The First State Bank sixty (60) days sight, issued by Diamond Plastic Corporation for Vic Klingenberg, d/b/a Arkansas Irrigation and Waterworks, Springdale, Ark. to the aggregate amount of Thirty Two Thousand Dollars (32,000.00) and negotiated through The First State Bank, Ketchum, Oklahoma.

> One negotiable Bill of Lading of each set and consular invoice[2] must be forwarded directly to The First State Bank, Ketchum, P.O. Box 750, Ketchum, OK 74349, immediately by the bank negotiating the documents. The remaining documents must accompany the drafts.

> This letter is to replace a letter of credit dated May 30, 1989 in the amount of $32,-000.00 and also another letter of credit dated May 30, 1989 in the amount of $30,-000.00."

The June 8 letter of credit was substantially the same as the June 1 except that it was in the amount of $15,000.00 and did not contain the final paragraph regarding the replacement of the May 30 letter of credit. The letters of credit were apparently sent to Diamond Plastics by facsimile machine transmission.[3]

Evidently, the goods were delivered to Klingenberg's business. Diamond Plastics received invoices and *nonnegotiable* Bills of Lading which it attached to a demand letter and sent by certified mail to the Bank on July 18, 1989, requesting payment on the letters of credit. The demand letter, typewritten on Diamond Plastics' letterhead, provides in pertinent part:

> "This will serve as our draft on your bank for the Letters of Credit drawn for Arkansas Irrigation and Waterworks, Springdale, Arkansas. Please make your cashiers check payable to Diamond Plastics Corporation, P.O. Box 1608, Grand Island, NE, 68802 in the amount of $43,137.02 (Invoices and Bills of Lading attached)."

Although the letters of credit specifically required *negotiable* Bills of Lading and consular invoices, Diamond failed to send either with the demand letter. It is important to note, however, that prior to the drafts in the case at bar, Diamond Plastics had submitted almost identical drafts on letters of credit containing the same compliance terms. Even though Diamond Plastics did not present the requisite *negotiable* bills of lading and consular invoices in those drafts, Bank honored the drafts and paid them.

The Bank refused to honor the demand, asserting nonconformity to the requirements of the letters of credit. However, the Bank failed to return the demand letter and attachments to Diamond Plastics. Eventually,

---

2. A consular invoice is defined as an "[i]nvoice used in foreign trade ... [which] facilitates entry through destination country." *Black's Law Dictionary* 286 (5th ed. 1979).

3. The facsimile machine used by the Bank was located at another Ketchum, Oklahoma, business. There was some dispute as to whether the letters of credit were valid because at the top of the letters were dates purportedly placed there by the facsimile machine. The "facsimile" dates (June 18 on the June 1 letter and June 25 on the June 8 letter) are dates occurring after Don Thorpe resigned from the Bank. The Bank asserted that the letters of credit were invalid because they were issued when Don Thorpe no longer had authority to issue letters of credit on behalf of the Bank. Because we find the Bank properly dishonored the demand of Diamond Plastics on other grounds, we need not resolve this dispute.

the Bank brought a declaratory action in the trial court to have its liability under the letter of credit determined. In turn, Diamond Plastics counterclaimed, asserting Bank wrongfully dishonored the demand upon the letters of credit and converted funds owed to Diamond Plastics.

We have never before considered the issue before us, however, we note a majority of courts agree that questions regarding liability on letters of credit may in some instances be appropriate for disposition by summary judgment. *Arbest Constr. Co. v. First Nat'l Bank & Trust Co. of Oklahoma City*, 777 F.2d 581 (10th Cir.1985); *Fidelity Bank v. Lutheran Mut. Life Ins. Co.*, 465 F.2d 211 (10th Cir.1972); *Bank of Montreal v. Federal Nat'l Bank & Trust Co. of Shawnee*, 622 F.Supp. 6 (W.D.Okla.1984); *West Virginia Hous. Dev. Fund v. Sroka*, 415 F.Supp. 1107 (W.D.Pa.1976); *Data Gen. Corp. v. Citizens Nat'l Bank*, 502 F.Supp. 776 (D.Conn.1980).

■ Summary judgment is appropriate only where it appears that there is no substantial controversy as to any material fact and that one party is entitled to judgment as a matter of law. *Sellers v. Oklahoma Publishing Co.*, 687 P.2d 116 (Okla.1984); *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947 (Okla.1984). On review, all inferences and conclusions to be drawn from the underlying facts will be reviewed in the light most favorable to the party opposing the motion for summary judgment. *Daugherty, supra; Redwine v. Baptist Medical Center of Oklahoma, Inc.*, 679 P.2d 1293 (Okla.1983).

Before addressing the specific question regarding Diamond Plastics' demand on the letter of credit issued by the Bank, a brief overview of the law of letters of credit is necessary.

## I.

## LETTERS OF CREDIT

■ Oklahoma has adopted the Uniform Commercial Code (UCC) provisions governing letters of credit. 12A O.S.Supp.1984, §§ 5-101 to 5-117. The Tenth Circuit Court of Appeals summarized the law of letters of credit in Oklahoma in *Arbest, supra:*

"Under those provisions, a letter of credit involves three parties: (1) an issuer (generally a bank) who agrees to pay conforming drafts presented under the letter of credit; (2) a bank customer or "account party" who orders the letter of credit and dictates its terms; and (3) a beneficiary to whom the letter of credit is issued, who can collect monies under the letter of credit by presenting drafts and making proper demand on the issuer. *See id.* § 5-103(1). A letter of credit thus involves three relationships—between the issuer and the account party, the issuer and the beneficiary, and the account party and the beneficiary (this last relationship being the underlying business deal giving rise to the issuance of the letter of credit.) The simple result is that the issuer substitutes its credit, preferred by the beneficiary, for that of the account party. The arrangement facilitates commercial transactions." 777 F.2d at 583. *Accord Centrifugal Casting Mach. Co. v. American Bank & Trust Co.*, 966 F.2d 1348 (10th Cir.1992) (construing Oklahoma law); *Savage v. First Nat'l Bank & Trust Co. of Tulsa*, 413 F.Supp. 447 (N.D.Okla.1976); *Colorado Nat'l Bank of Denver v. Board of County Comm'rs of Routt County*, 634 P.2d 32 (Colo.1981); *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461 (2d Cir.1970).

Although *Arbest* is factually distinguishable from the case at bar in that it involved a "standby" letter of credit[4] issued to the lender in a construction project and concerned demand on that letter of credit by parties not named as beneficiaries, the Tenth Circuit properly construed the provisions of Article 5 of Oklahoma's version of the UCC. Thus, we adopt the holding regarding the operation of Oklahoma's statutory letter of credit law contained in *Arbest* and apply that construction of the law.

4. A "standby" letter of credit differs from a standard commercial letter of credit in that the letter is simply a paying mechanism whereby a buyer/customer has an issuer/bank promise to pay a seller/beneficiary when the Seller presents the demand and evidence that the goods sold have been delivered. *Arbest, supra.* A standby letter of credit merely acts as a backup so that the beneficiary makes demand on the credit only if the customer fails to pay or perform under a contract. *Id.* The standby credits operate simi-

Each party to the transaction owes certain contractual and/or statutory duties to the other parties. Section 5–103 cited in *Arbest,* indicates one such duty, the duty of the issuer to the customer, when it defines a letter of credit as "an engagement by a bank . . . made at the request of a customer and of a kind within the scope of this Article (Section 5–102) that *the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit.*" (Emphasis added).

■ The Tenth Circuit noted in *Arbest, supra,* that the relationship between the issuer of the letter of credit and the beneficiary thereunder is purely statutory. Once the letter of credit is issued, " 'the issuer becomes *statutorily* obligated to honor drafts drawn by the beneficiary that comply with the terms of the credit.' " 777 F.2d at 584 (quoting J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 18–2, at 711 (2d ed. 1980)) (Emphasis in original). When a draft is made upon the issuer of a letter of credit to pay on that letter of credit, the statutory duty of the issuer is to honor the draft if it is accompanied by a proper demand. Title 12A O.S.Supp.1984, § 5–114, provides:

> "(1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary."

In other words, the issuer has no discretion in determining whether the beneficiary has met all of the requirements of the underlying contract with the customer. Indeed, the commercial vitality of letters of credit are grounded in the issuers' lack of control over the underlying transaction or the choice of beneficiary. *Arbest, supra; Colorado Nat'l Bank, supra; United States v. Sun Bank of Miami,* 609 F.2d 832 (5th Cir.1980). The issuer merely writes a letter of credit pursuant to the instructions of its credit-worthy customer and pays on it when proper demand is made, all without investigating anything other than the face of the documents presented. *Arbest, supra. See also Ward*

*Petroleum Corp. v. Federal Deposit Ins. Corp.,* 903 F.2d 1297, 1299 (10th Cir.1990) (" 'The duty of the issuing Bank is ministerial in nature, confined to checking the presented documents carefully against what the letter of credit requires.' ") (quoting *American Coleman Co. v. Intrawest Bank,* 887 F.2d 1382, 1386 (10th Cir.1989).

 This has come to be known as the "independence principle" because of the independence of the letter of credit from the underlying commercial transaction. This independence facilitates payment on the letter of credit upon a mere facial examination of documents making the letter of credit "a unique commercial device which assures prompt payment." *Ward Petroleum,* 903 F.2d at 1299. *Accord Centrifugal Casting Mach. Co., supra. See generally,* J. Dolan, *The Law of Letters of Credit* ¶¶ 2.01, 3.07 (1984); 2 I. White and R. Summers, *Uniform Commercial Code* § 19–2, at 8 (3d ed. 1988). The issuing bank "looks solely at the letter and the documentation the beneficiary presents, to determine whether the documentation meets the requirements in the letter." *Marino Indus. Corp. v. Chase Manhattan Bank, N.A.,* 686 F.2d 112, 115 (2d Cir.1982). Because the bank is only concerned with determining whether the documentation strictly complies with the terms of the letter of credit, it is able to act quickly and surely upon presentment of the draft. *Id.*

■ However, "a corollary to the strict duty of the issuer to honor proper demand" is the "broad right to ignore improper demand," 777 F.2d at 584, and it is this right which is at the heart of this lawsuit.

## II.

## DIAMOND PLASTICS' DRAFT DID NOT COMPLY WITH THE TERMS OF THE LETTER OF CREDIT

### A.

### The Oklahoma Version of the Uniform Commercial Code Requires Strict Compliance With A Letter of Credit When Demand Is Made Thereon

Diamond Plastics asserts the draft it sent to Bank complied with the terms of the letter

---

larly to a surety bond and are used widely in construction ventures.

of credit. Bank counters that Diamond Plastics did not *strictly* comply with the letter's terms as required by law. The Bank points to *LeaseAmerica Corp. v. Norwest Bank Duluth, N.A.,* 940 F.2d 345 (8th Cir.1991), in support of its argument. Therein, the Eighth Circuit Court of Appeals found that the majority of jurisdictions have adopted a rule requiring strict compliance with the terms of a letter of credit when presenting it for payment. The beneficiary in *LeaseAmerica* brought an action against the issuing bank for wrongful dishonor when the bank refused to honor the letter of credit where the beneficiary failed to include certain documents with its draft. The appellate court affirmed the trial court's summary judgment for the bank and rejected a standard of substantial compliance urged by the beneficiary. The court stated:

"Adoption of a substantial compliance standard would place issuing banks in uncertain positions with respect to their obligations.... [I]f this court were to adopt this standard, the issuing bank would be required to apply a legal or commercial analysis, often without benefit of professional advice, in every situation in which compliance was colorably 'substantial.' We believe that this would burden an issuing bank unduly and would fetter the commercial purposes of the letter of credit. Adoption of a substantial compliance standard on grounds that the result will more likely meet the parties' expectations might also erode the principle that a letter of credit is independent of contracts between the bank's customer and the beneficiary." 940 F.2d at 348–49 (Citations omitted).

*Accord Voest–Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.,* 707 F.2d 680, 682–83 (2d Cir.1983) ("Adherence to this rule [of strict compliance] ensures that banks, dealing only in documents, will be able to act quickly, enhancing the letter of credit's fluidity."); *Philadelphia Gear Corp. v. Central Bank,* 717 F.2d 230, 236 (5th Cir.1983) ("This doctrine of strict compliance is firmly grounded in commercial reality. In the event payment is made upon presentations that do not conform to the credit, the issuer loses its right to reimbursement from its customer."); *Siderius v. Wallace Co.,* 583 S.W.2d 852, 859 (Tex.Civ.App.1979) ("The rule of strict conformity is necessary because the issuer, dealing solely in documents, should not be required to examine the performance of the underlying transaction to determine if the terms of the letter of credit have been fulfilled."). *See generally* Dolan J., *Strict Compliance with Letters of Credit: Striking a Fair Balance,* 102 Banking L.J. 18 (1985). The overwhelming majority of courts considering the issue of compliance with the terms of letters of credit have adopted the strict compliance standard. *See Seattle–First Nat'l Bank v. Fed. Deposit Ins. Corp.,* 619 F.Supp. 1351, 1362 (W.D.Okla. 1985) ("Most (though not all) of the circuit courts ... have held that an issuing and a confirming bank are entitled to demand a beneficiary's 'strict compliance' with the terms of presentment specified in a letter of credit.") and cases cited therein.

Furthermore, one Federal District Court in Oklahoma adopted the strict compliance rule stating "where specific documents are called for in a letter of credit, nothing short of the production of these documents will make the issuer of the credit responsible." *Bank of Am. Nat'l Trust & Sav. Ass'n v. Liberty Nat'l Bank & Trust Co.,* 116 F.Supp. 233, 236, n. 11 (W.D.Okla.1953), *aff'd,* 218 F.2d 831 (10th Cir.1955). The opinion continued by quoting with approval from a Massachusetts Supreme Court case, *Moss v. Old Colony Trust Co.,* 246 Mass. 139, 140 N.E. 803, 808 (1923), as follows:

"There is no promise to pay unless drafts are in strict conformity to the authority conferred.... *The bank as the writer of the letter of credit will not be bound to accept and pay bills or drafts drawn against it unless the holder of the letter pursues and conforms in every particular to the authority conferred therein.*" 116 F.Supp. at 237, n. 11 (Emphasis in original).

We agree that adoption of a standard any less than strict compliance would defeat

the purpose and intended operation of a letter of credit. We, therefore, join the majority of jurisdictions which hold strict compliance with the terms of the letter of credit as the standard to be used by issuers in determining whether to honor a draft on a letter of credit. We also note, however, that even if we were to adopt a substantial compliance rule for cases such as this, Diamond Plastics' presentment in the case at bar would likely fail the substantial compliance standard as the required documentation was wholly absent in the presentment. We are not here dealing with a minor discrepancy or a typographical error. Having concluded that strict compliance with the terms of the letter of credit is required, we now look to the draft sent by Diamond Plastics to determine whether it strictly complied with the terms of the letter of credit.

## B.

### Diamond Plastics' Draft Did Not Strictly Comply With the Terms of the Letter of Credit

■ The court in *Venizelos, S.A. v. Chase Manhattan Bank, supra,* explained strict compliance as follows:

> "Since the bank is interested only in the documents to be presented, the essential requirements of a letter of credit must be strictly complied with by the party entitled to draw against the letters of credit, which means that *the papers, documents and shipping descriptions must be as stated in the letters.*" 425 F.2d at 465 (Emphasis added). *See also Marino Indus., supra,* (quoting *Venizelos* ).

The question then is whether the documents presented by Diamond Plastics along with its demand were the documents stated in the letter of credit.

■ Diamond Plastics points to the corollary to the rule of strict compliance that the terms and requirements set forth in letters of credit must be explicit and any ambiguity therein is construed against the issuing bank.

*Marino Indus.,* 686 F.2d at 115. This is so because in order to strictly comply with the requirements of the letter, the beneficiary "must know precisely and unequivocally what the requirements are." *Id.*

In *Marino,* the court determined the issuing bank justifiably dishonored the beneficiary's draft because documentation presented with the draft did not conform to the requirements of the letter of credit. The letter of credit required a telex be sent showing that, among other things, "1 legalized packing list" had been sent to the port of destination. Because the telex referred only to a packing list and no mention was made on the telex that a "legalized" packing list was not sent, the court concluded that *the telex did not conform* to the requirements of the letter of credit.

In the case at bar, the terms of the letter of credit are not ambiguous. The letter explicitly requires a "negotiable Bill of Lading of each set and consular invoice" to be forwarded to the Bank. Having presented "nonnegotiable" bills of lading and no consular invoice, Diamond Plastics' draft did not strictly conform to the terms of the letters of credit.

Diamond Plastics counters that the negotiable bills of lading and consular invoices were only required if another bank was negotiating the documents. The paragraph at issue states:

> "One negotiable Bill of Lading of each set and consular invoice must be forwarded directly to The First State Bank, Ketchum, P.O. Box 750, Ketchum, OK 74349, immediately by the bank negotiating the documents. The remaining documents must accompany the drafts."

Construing the letter of credit in the manner urged by Diamond Plastics would lead to an absurd result because the only documents Diamond Plastics would be required to present along with its draft were the "remaining documents." Not knowing what the "remaining documents" include, Diamond Plastics would be unable to comply with the

terms of the letter of credit. Moreover, the Bank would not know whether what Diamond Plastics has presented as documentation does in fact comply with the letter's terms. Rather than construing the letter as Diamond Plastics reads it, we find the letter requires Diamond Plastics *or any banks negotiating the letters of credit* to present the negotiable bills of lading and consular invoices along with any drafts.

Diamond Plastics further asserts that the terms of the letter of credit were impossible to fulfill because no negotiable bills of lading or consular invoices were generated in the underlying transaction. It is true that these documents were not generated. However, we conclude that Diamond Plastics assumed the risk that it would not get paid on the letters of credit when it did not negotiate with Klingenberg on the terms of the letter of credit.

> "The beneficiary always assumes the risk that it will not be able to collect from the bank if it does not present documents in precise compliance with the letter of credit's requirements. *This is the very reason that the beneficiary is given the opportunity to examine and either accept or reject the letter of credit.*" *In re Coral Petroleum, Inc.*, 878 F.2d 830, 834 (5th Cir.1989) (Emphasis added).

If the terms of the letter of credit are not to the beneficiary's approval, i.e. if the letter of credit requires documentation that will not be generated as in the case at bar, the beneficiary may refuse to ship the goods until a letter of credit is issued with terms with which the beneficiary can comply. If the beneficiary fails to negotiate the terms of the letter of credit, it must make sure conforming documents are generated in the underlying transaction so that it will be able to comply. Professor Dolan explains it as follows:

> "The first and most efficient protection against unfair objection by the bank is fashioned by the beneficiary himself. First, *he must insist in the underlying transaction that the [letter of] credit require only those documents that he can supply,* and if the credit imposes impractical conditions, he should suspend performance until the issuer amends the credit." Dolan, J., "Strict Compliance With Letters of Credit: Striking a Fair Balance," 102 Banking L.J. 18, 28 (1985) (Emphasis added).

*The burden is thus placed upon the beneficiary to make sure the terms of the letter of credit can be met rather than upon the issuing bank which may have no knowledge of what documents will be generated by the transaction.* Since the customer typically dictates the terms of the letter of credit, *see Arbest,* 777 F.2d at 583, Diamond Plastics should have contacted Klingenberg when it became apparent that compliance with the terms was impossible.

The court in *Coral Petroleum* clarified this in its decision regarding the dishonor of a letter of credit which contained terms the beneficiary claimed were impossible to fulfill. The court rejected the argument of the beneficiary that because strict compliance with the terms was impossible, the letter of credit should be construed so that strict compliance was not required. Rather, the court held:

> "We note that, while there does not appear to be much case law concerning this issue, at least one commentator in the field of letter of credit law has suggested that impossibility does not excuse strict compliance with the terms of a credit:
>
> > The strict-compliance rule has the intended salutary effect of requiring the beneficiary to review the credit to be certain that he can comply with it. That inquiry, which permits the beneficiary to verify that the credit complies with the underlying contract, also permits him to make timely requests for amendments and to withhold shipment or other performance if the credit does not comply with the underlying transaction *or is impossible for him to satisfy.* It is more efficient to require the beneficiary to conduct that review of the credit before the fact of performance than after

it, and the beneficiary that performs without seeing or examining the credit should pay the piper.

J.F. Dolan, *The Law of Letters of Credit*, ¶ 6.03 at S6–3 to S6–4 (Supp.1989) (emphasis added).

Similarly, a beneficiary who negligently inspects a letter of credit and thereby fails to discover that the requirements are impossible for him to satisfy should be required to "pay the piper" as well. This is especially true in a case such as this one, where the impossibility arises from the use of technical or trade terms and where the bank has performed exactly as requested by its customer." 878 F.2d at 833 (Emphasis in original).

Consequently, if Diamond Plastics could not possibly fulfill the requirements of the letter of credit, i.e. present *negotiable* bills of lading and consular invoices, the onus of changing those terms so that compliance was possible fell upon the beneficiary, Diamond Plastics. Having failed to have the letter of credit amended so that the documents generated by the transaction would suffice under the requirements of the letter of credit, Diamond Plastics cannot now complain of its inability to comply with the terms so provided.

Despite the assertion of Diamond Plastics, the case at bar does not present an analogous situation to that faced by the court in *Willow Bend Nat'l Bank v. Commonwealth Mortgage Corp.*, 722 S.W.2d 12 (Tex.Ct.App. 1986). In *Willow Bend*, the issuing bank dishonored the beneficiary's draft because a negotiating bank had not endorsed the draft when the letter of credit had terms which included:

"The amount of the draft must be endorsed on reverse hereof by negotiating bank."

The appellate court determined that an endorsement was only necessary if the beneficiary negotiated the draft through another bank. In other words, compliance with the terms regarding a negotiating bank were only required if a negotiating bank was used. Since the draft was not negotiated through another bank, the issuing bank wrongfully dishonored the draft which otherwise complied.

The case at bar is distinct from *Willow Bend* in that negotiable bills of lading were required whether the draft was presented by Diamond Plastics or some negotiating bank. The use of an intermediary negotiating bank did not add to the terms of the letter of credit in the instant case in the way they did in *Willow Bend.*

The documents presented by Diamond Plastics did not strictly comply with the terms of the letter of credit. Therefore, Bank did not wrongfully dishonor the drafts unless Bank is estopped from requiring strict compliance due to its previous actions on other letters of credit.

## III.

### SUMMARY JUDGMENT WAS IMPROPER IN THIS CASE BECAUSE A MATERIAL ISSUE OF FACT REMAINS AS TO WHETHER BANK IS ESTOPPED FROM DEMANDING STRICT COMPLIANCE

Diamond Plastics's pleads that Bank is estopped from requiring strict compliance with the terms of the letters of credit because Bank had previously allowed nonconforming presentment. Although Article 5 of the UCC does not specifically provide for estoppel in letter of credit practice, such rules of law are not prohibited by it. Indeed, § 5–102 provides:

"(3) This Article deals with some but not all of the rules and concepts of letters of credit as such rules or concepts have developed prior to this act or may hereafter develop. The fact that this Article states a rule does not by itself require, imply or negate application of the same or a converse rule to a situation not provided for or to a person not specified by this Article." 12A O.S.1981, § 5–102.

■ Therefore, common law doctrines such as estoppel may be applied to cases involving letters of credit, and many courts have utilized estoppel in determining how to resolve issues in wrongful dishonor cases. *See also W.R. Grimshaw Co. v. First Nat'l Bank & Trust Co. of Tulsa,* 563 P.2d 117 (Okla.1977) ("Estoppel is incorporated into the UCC as a supplemental principle of law [under § 1–103 of the UCC].").

Diamond Plastics alleges Bank honored drafts on earlier letters of credit issued to Diamond Plastics even though Diamond Plastics had failed to strictly comply with the terms of those letters of credit. The letters contained similar language and requirements as the ones at bar yet the Bank honored drafts on those letters even though Diamond Plastics did not present negotiable bills of lading and consular invoices with the drafts.

Some courts have held that an issuing bank may be estopped from demanding strict compliance where it has honored nonconforming presentment of documents in past dealings with the beneficiary. *Seattle–First, supra; Schweibish v. Pontchartrain State Bank,* 389 So.2d 731 (La.App.1980).

■ Estoppel is generally understood to prevent one party from taking a legal position which is inconsistent with an earlier action that places the other party at a disadvantage. *Penny v. Giuffrida,* 897 F.2d 1543 (10th Cir.1990). This Court has explained the doctrine of equitable estoppel as follows:

"Equitable estoppel is the result of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might have otherwise · existed as against a person who, in good faith, relied on such conduct and has been thereby led to change his position to his detriment, and who has acquired some corresponding right. It holds a person to a representation made, or a position assumed, where otherwise inequitable consequences would result to another, who, having a right to do so under the circumstances, has in good faith, relied thereon. Whether the doc-

trine of equitable estoppel is applicable depends on the facts and circumstances of each case." *Apex Siding & Roof Co. v. First Fed. Sav. & Loan Ass'n of Shawnee,* 301 P.2d 352, 355 (Okla.1956).

■ The doctrine was originally developed to protect a person from loss which, but for the estoppel, he could not avoid. *Cleveland Trust Co. v. State ex rel. Hunt,* 555 P.2d 594 (Okla.1976). Estoppel is used to prevent injustice and promote justice and should not be used to work a positive gain to a party. *Id.* Diamond Plastics claims that because Bank honored previous drafts which failed to conform to the letter of credit in the same way that the draft in the case at bar did, Bank should be estopped from asserting its right to demand strict compliance.

The court in *Schweibish, supra,* noted that where the bank assumed a position totally inconsistent with its prior actions by demanding strict compliance on one draft when it had previously honored nonconforming drafts. The court stated that if the bank was going to demand strict compliance on the subject draft it needed to give notice of such to the beneficiary which had relied on the banks' previous action to its detriment. Likewise, Diamond Plastics was entitled to notice that strict compliance was required on its final draft after detrimentally relying on Bank's honor of nonconforming drafts in the past if such actually occurred.

Therefore, material issues of fact remain to be addressed in this action, to wit, whether Bank honored previous nonconforming drafts and whether Diamond Plastics detrimentally relied on Bank's previous conduct. The resulting question as to whether Bank is estopped from demanding strict compliance in Diamond Plastic's latest draft is the crux of the cause of action. This matter must be remanded for resolution of these issues. Hence, it was error for the district court to grant summary judgment to Bank on the issue of wrongful dishonor. We do not here decide whether Diamond Plastics is entitled to judgment as a matter of law. Rather, we remand this case for further proceedings.

## IV.

## CONVERSION

In its counterclaim, Diamond Plastics claimed Bank converted its *funds* by withholding payment on Diamond Plastics' draft. In its brief in support of summary judgment and briefs on appeal, Diamond Plastics asserts Bank converted both the *funds* and the *instruments* submitted as a draft on the letter of credit.

Conversion is "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Steenbergen v. First Fed. Sav. & Loan of Chickasha*, 753 P.2d 1330, 1332 (Okla.1987). Based upon this definition, we find Bank could not have converted the *funds* because Diamond Plastics *never* acquired a personal property interest in those funds. Diamond Plastics was not entitled to payment under the letter of credit until a conforming draft was made. *Arbest, supra*. Having failed to present conforming documents with its draft, Diamond Plastics never acquired a property interest in the funds.

This finding is unaffected by our holding remanding this matter for a determination of the estoppel issue. Estoppel is an affirmative plea which must be proved by the party asserting it. *Peoples Fin. & Thrift Co. v. Fuller*, 196 Okla. 32, 162 P.2d 189 (1945); *Poteau State Bank v. Denwalt*, 597 P.2d 756 (Okla.1979). A determination that Bank is estopped, if so made, does not also prove that Diamond Plastics had a property interest in the funds that was converted by Bank. If the trial court or jury finds Bank is estopped from asserting strict compliance, such finding goes only to the wrongful dishonor claim. If Bank wrongfully dishonored the draft, Diamond Plastics is not entitled to the funds held by Bank. Rather, Diamond Plastics is entitled to *damages* for wrongful dishonor. The conversion of funds claim is dependent upon Diamond Plastics having a personal property interest in the funds. Such an interest never arose. Therefore, Bank was entitled to judgment as a matter of law on the conversion of *funds* claim.

However, the same cannot be said for Diamond Plastics' claim for conversion of *instruments*. Diamond Plastics contends 12A O.S.1981, § 3–419(1)(b) makes Bank liable for the amount of the draft because Bank neither paid nor returned the *instruments*. Section 3–419(1)(b) provides:

"(1) An *instrument* is converted when

\*　　\*　　\*　　\*　　\*　　\*

(b) any person to whom it is delivered for payment *refuses on demand* either to pay or to return it ..." (Emphasis added).

Bank counters that Diamond Plastics never made "demand" on Bank to return the *instruments*. This, of course, is a fact question, properly presented to the trier of fact. This matter must be remanded for consideration of this fact issue.

## CONCLUSION

The primary issues before the district court and this Court were what documentation the terms of the letters of credit required and whether Diamond Plastics' documentation strictly complied with those terms. We find that the letters of credit required Diamond Plastics to submit negotiable bills of lading and consular invoices with its draft. Having failed to do so, Diamond Plastics' draft was nonconforming. However, substantial fact issues remain to be resolved as to whether Bank is estopped from demanding strict compliance by previously allowing Diamond Plastics to submit similarly nonconforming documents along with drafts on almost identical letters of credit. Thus, the district court erred in granting summary judgment to the Bank as to the issue of whether the Bank wrongfully dishonored Diamond Plastics' draft on the letters of credit, and this matter must be remanded for resolution of those fact questions.

As to the cause of action for conversion, we conclude that under the proof before us, Bank did not convert the *funds* it held because those funds were never the property of Diamond Plastics. However, Bank may have

converted the *instruments* submitted by Diamond Plastics under 12A O.S.1981, § 3–419(1)(b), but this issue must be resolved on remand.

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED, the judgment of the district court is REVERSED and the case REMANDED to the district court for further proceedings consistent with this opinion.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

SUMMERS, J., concurs in part, dissents in part.

SUMMERS, Justice, concurring in part and dissenting in part.

I agree that strict compliance is a proper standard for measuring a demand for payment pursuant to a letter of credit. I further agree that a nonnegotiable bill of lading cannot be unilaterally presented by a beneficiary to demand payment on a letter of credit requiring a negotiable bill of lading. But this letter of credit does not require Diamond Plastics to present a negotiable bill of lading. In my view, its presentment strictly complied with the terms of the letter of credit. I would not remand this case on an estoppel theory as does the Court, but rather would remand with instructions to enter judgment for appellant Diamond Plastics Corporation.

A letter of credit involves three, and sometimes four, parties: a customer, a seller, an issuing bank, and sometimes a confirming, or negotiating, bank. *See* 12A O.S.1991 § 5–103; *Centrifugal Casting Machine Co., Inc. v. American Bank & Trust Co.*, 966 F.2d 1348, 1351–1352 (10th Cir.1992). One author explained the usual commercial practice after the seller (beneficiary) sends the goods to the customer (account party):

> ... in the commercial setting, the owner of the goods (i.e., the beneficiary) has sent the documents representing the right to obtain possession of those goods to the issuer. If the issuer finds the documents in order, it pays the beneficiary for them. It now owns the documents and has the right to have the goods. If the account party is unable or unwilling to reimburse, the issuer retains the documents, and has some security, at least, for its reimbursement claim against its customer. However, if the account party, the buyer, reimburses the issuer, the issuer transfers the documents to the account party, who then obtains possession of the goods represented by the documents.

Rosenblith, *Seeking a Waiver of Documentary Discrepancies from the Account Party: Unexplored Legal Problems*, 56 Brooklyn L.Rev. 81, 83 (1990).

This concept is echoed in White & Summers, *Uniform Commercial Code*, § 19–4 (3rd ed. 1988), where the authors explain that the issuing bank is protected upon its payment to the beneficiary by the bank's possession of the documents that control the goods.

In our case the customer was Vic Klingenburg, d/b/a Arkansas Irrigation and Waterworks. His bank, First State Bank of Ketchum, issued a letter of credit promising to pay a certain amount to the beneficiary, Diamond Plastics Corporation. Did the issuing bank wrongfully dishonor the letter of credit? I conclude that it did.

When documents are presented to a bank for payment on a letter of credit the bank "must examine documents with care so as to ascertain that on their face whether they appear to comply with the terms of the credit. . . ." 12A O.S.1991 § 5–109. *See Ward Petroleum Corp. v. Federal Deposit Insurance Corp.*, 903 F.2d 1297, 1299 (10th Cir. 1990). A letter of credit is independent of the underlying contracts, and pursuant to a standard of strict-compliance the examiner at the issuing bank must exercise discretion to the extent of factually determining if the documents facially meet the specifications of those required by the face of letter of credit. In other words, are the documents a mirror-image of those required by the letter of

credit?[1] In actions by beneficiaries against the issuing bank for wrongful dishonor courts have split on whether minor spelling errors or insignificant errors should be overlooked when no one could have been misled by the payment.[2] Even in opinions articulating a strict-compliance standard a literal mirror-image analysis has not always been required.[3] One court following a strict-compliance standard stated that: "In Nebraska, when construing the provisions regarding documentation for a letter of credit, the courts 'will not demand literal adherence to requirements dictated by the parties at the risk of frustrating the objectives of the Uniform Commercial Code.'"[4]

There is also a substantial-compliance standard, which many courts have rejected.[5] One court has stated that an action against the issuing bank by the beneficiary involves a strict-compliance standard, while an action against the issuer by the account party for wrongful payment involves a substantial-compliance standard. *Far Eastern Textile, Ltd. v. City Nat. Bank & Trust Company*, 430 F.Supp. 193, 196–197 (S.D.Ohio 1977). The strict-compliance standard appears to be the one most followed by courts, though its application has not caused uniform results. I concur in its adoption for Oklahoma in an action brought by a beneficiary against an issuer.

I also agree that a required negotiable bill of lading cannot be replaced with a nonnegotiable bill. One court explained the importance of a negotiable bill of lading this way:

1. *Marino Industries Corp. v. Chase Manhattan Bank, NA*, 686 F.2d 112, 115 (2d Cir.1982); *Westwind Exploration, Inc. v. Homestate Savings Association*, 696 S.W.2d 378, 381 (Tex.1985); *Airlines Reporting Corporation v. Higginbotham*, 643 So.2d 952, 954 (Ala.1994). One author has argued this rule of strict compliance is derived from both the independence principle (i.e., that the letter is independent of underlying contracts) and the fact that banks deal solely in documents. Rosenblith, *Letter-of-Credit Practice: Revisiting Ongoing Problems*, 24 U.C.C.L.J. 120, 121 n. 3 (1991). *See Semetex Corporation v. UBAF Arab American Bank*, 853 F.Supp. 759, 769–770 (S.D.N.Y.1994), (describing letter of credit relationships and that the parties deal in documents and not in goods to which the documents relate).

2. *See Breathless Associates v. First Savings & Loan Association*, 654 F.Supp. 832 (N.D.Tex. 1986), (bank was required to pay where presentment of a note dated April 28, 1983 was required and a note dated April 29, 1983 was presented); *Beyene v. Irving Trust Company*, 596 F.Supp. 438 (S.D.N.Y.1984), *affirmed*, 762 F.2d 4 (2d Cir. 1985), (document misspelling last name of Sofan as Soran was sufficient to dishonor).

3. See *Tosco Corporation v. Federal Deposit Insurance Corporation*, 723 F.2d 1242 (6th Cir.1983), (deviations in certain words were insubstantial and did not warrant dishonor); *Banco Espanol de Credito v. State Street Bank & Trust Company*, 385 F.2d 230 (1st Cir.1967), *cert. denied*, 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 163 (1968), (dishonor not proper although letter of credit required inspection certificate that goods were in conformity with the order and draft of corresponding bank stated that goods conformed to conditions on order-stock-sheets); *Bank of Co-chin Limited v. Manufacturers Hanover Trust Company*, 612 F.Supp. 1533, 1541 (S.D.N.Y. 1985), *affirmed on other grounds*, 808 F.2d 209 (2d Cir.1986), (court discussed submitting only five copies of documents when six copies was required and misspelling the name Smith as Smithh, and that these types of variances may be allowed when there is no possibility that they would mislead the paying bank to its detriment). *See also American Airlines Inc. v. Federal Deposit Insurance Corporation*, 610 F.Supp. 199 (D.Kan. 1985), (applying Kansas law and discussing a defect in misnumbering a letter of credit). One author has argued that a defect in required documents should be disregarded when the defect does not impugn the integrity of the document, and when disregard of the defect is within the commercial expectation of the parties. Kozolchyk, *Strict Compliance and the Reasonable Document Checker*, 56 Brooklyn L.Rev. 45 (1990). *See also* Rosenblith, *Letter-of-Credit Practice: Revisiting Ongoing Problems*, 24 U.C.C.L.J. 120, 123 n. 7 (1991).

4. *Kelley v. First Westroads Bank*, 840 F.2d 554, 559–560 (8th Cir.1988), citing, *Brown v. United States National Bank of Omaha*, 220 Neb. 684, 371 N.W.2d 692, 791 (1985), (an opinion that cited the strict-compliance standard).

5. *American Coleman Co. v. Intrawest Bank of Southglenn, N.A.*, 887 F.2d 1382, 1386 (10th Cir. 1989), (expressly rejected a rule of substantial-compliance); *Insurance Company of North America v. Heritage Bank*, 595 F.2d 171, 175 (3d Cir.1979), (same); *Osten Meat Company v. First America Bank–Southeast Michigan, NA*, 205 Mich.App. 686, 517 N.W.2d 742 (1994), (same).

"a negotiable or order bill of lading is a fundamental and vital pillar of international trade and commerce, indispensable to the conduct and financing of business involving the sale and transportation of goods between parties located at distance from one another."[6] A negotiable bill of lading is different than a nonnegotiable bill:

> A negotiable bill of lading calls for the freight to be delivered to the bearer of the bill; one who has possession of a negotiable bill of lading is deemed to have title to the shipped goods. A nonnegotiable bill of lading, in which a consignee is specified, may be considered evidence of title, but the transfer of a nonnegotiable bill of lading does not, in and of itself, transfer title to the goods under the bill.

*Met–Al, Inc. v. Hansen Storage Company*, 828 F.Supp. 1369, 1375 (E.D.Wis.1993), citing, White & Summers, *Uniform Commercial Code*, § 21–4 at 163 (1988).

A letter of credit is totally independent of the underlying contracts.[7] Thus, the issuing bank usually does not examine the underlying agreements, and ambiguity in those agreements is not used to interpret the letter of credit. *Pringle–Associated Mortgage Corporation v. Southern National Bank of Hattiesburg*, 571 F.2d 871, 874 (5th Cir.1978). A nonnegotiable bill of lading, as an instrument evidencing the underlying agreement, would ordinarily not be relied upon to determine whether the issuing bank is required to pay on the letter of credit. However, in this case the letter of credit is ambiguous on its face by requiring that "The remaining documents must accompany drafts." This is so because the identity of the remaining documents is nowhere specified on the face of the letter of credit. A nonnegotiable bill of lading could thus be presented as a remaining document accompanying a draft, but not as a substitute for a negotiable bill of lading.

The Court states that it is applying the rule of strict-compliance but then fails to strictly read the letter of credit. The terms of the letter of credit do not require Diamond Plastics to submit a negotiable bill of lading. The letter of credit requires a confirming bank ("the bank negotiating the documents") to submit a negotiable bill of lading. I have no doubt that had the bank carefully considered the language of the letter it would have required a negotiable bill of lading by anyone demanding payment.[8] But the bank did not require negotiable bills of lading from anyone

---

6. *Berisford Metals Corp. v. S/S Salvador*, 779 F.2d 841, 845 (2d Cir.1985). *See Hartford Fire Insurance Company v. M/V "SAVANNAH"*, 756 F.Supp. 825 (S.D.N.Y.1991), (same). *Cf. Buckeye Cellulose Corp. v. Atlantic Mutual Insurance Company*, 643 F.Supp. 1030, 1032 (S.D.N.Y. 1986), (a negotiable bill of lading served purpose of authorizing consignee to possession of cargo); *Fuentes v. Sea–Land Services Inc.*, 665 F.Supp. 206, 209 (S.D.N.Y.1987), (explained functions of bill of lading); *C–Art, Ltd. v. Hong Kong Islands Line America, S.A.*, 940 F.2d 530, 531–532 (9th Cir.1991), (defined bill of lading as a receipt for goods, contract for their carriage, and documentary evidence of title to goods, and described transaction whereby bills of lading were presented to bank for payment); *Allied Chemical International Corp. v. Companhia De Navegacao Lloyd Brasileiro*, 775 F.2d 476, 481 (2d Cir.1985), (explained that a seller distant from a buyer often tenders shipping documents, including a negotiable bill of lading, rather than the goods).

7. *Murphy v. Federal Deposit Insurance Corporation*, 38 F.3d 1490, 1502 (9th Cir.1994); *Security Finance Group, Inc. v. Northern Kentucky Bank and Trust, Inc.*, 858 F.2d 304, 307 (6th Cir.1988); *Pringle–Associated Mortgage Corp. v. Southern Nat. Bank of Hattiesburg*, 571 F.2d 871, 874 (5th Cir.1978); *Centrifugal Casting Machine Co., Inc. v. American Bank & Trust Co.*, 966 F.2d 1348, 1352 (10th Cir.1992); *Bank of China v. Chan*, 937 F.2d 780 (2d Cir.1991); Colon, *Letters of Credit in Times of Business and Bank Failures*, 107 Banking L.J. 6, 8 (1990). *See also Ward Petroleum Corp. v. Federal Deposit Insurance Corp.*, 903 F.2d 1297, 1299 (10th Cir.1990), (the independence of the letter of credit from the underlying transaction means that honoring the letter of credit turns upon a facial examination of the letter of credit and the documents presented without regard to the underlying contract for sale).

8. I have no doubt that the bank would have also more carefully considered the requirement of a consular invoice. A consular invoice is used only when the point of shipment is outside the United States. See 19 U.S.C. §§ 338–340 and *Jay–Arr Slimwear Inc. v. United States*, 681 F.Supp. 875, 880 (Ct.Int'l Trade 1988).

demanding payment, only a negotiating bank. For this Court to hold that this letter of credit required Diamond Plastics to submit negotiable bills of lading is to create a letter of credit based upon what the bank should have issued, instead of enforcing the letter actually written. In *Aetna Insurance Company v. S.S. Ortiguera*, 583 F.Supp. 671, 674 (S.D.N.Y.1984), the court explained that seller, manufacturer, or shipper could have structured the documentation to retain title until payment by issuing a negotiable bill of lading against an international letter of credit, but chose not to do so. In our case the issuing bank could have stated similar requirements on the face of the letter of credit, but it did not.

The bank wrote the letter of credit and should be held accountable for the imprecision in its terms. Diamond Plastics complied with the literal terms on the face of the letter of credit. Its presentment was proper and the bank should be required to pay on it. I would remand and direct that judgment be entered for Diamond Plastics.