2016 OK CIV APP 75

**STATE OF OKLAHOMA EX REL., John D. DOAK, Insurance Commissioner, Petitioner/Appellee,**

v.

**PRIDE NATIONAL INSURANCE COMPANY, Defendant,**

**Fifth Third Bank, Appellant.**

**Case Number: 113454**

Court of Civil Appeals of Oklahoma, Division No. 1.

Decided: 02/12/2016

Mandate Issued: 12/14/2016

George M. Emerson, Robert A. Nance, RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS, Oklahoma City, Oklahoma, for Petitioner/Appellee,

Joel W. Harmon, Melanie Wilson Rughani, Cullen D. Sweeney, CROWE & DUNLEVY, Oklahoma City, Oklahoma, for Appellant.

BRIAN JACK GOREE, JUDGE:

¶1 This appeal arises from the receivership of an insolvent insurance company, Defendant Pride National Insurance Company (Pride). Appellant, Fifth Third Bank (Bank), seeks review of the trial court's order ordering Bank to turn over to the State of Oklahoma, ex rel. John D. Doak, Insurance Commissioner (Receiver), cash collateral securing Bank's letter of credit. We hold that under the Insurance Code, Bank was a secured creditor who was entitled to discharge its claim by resort to the security. We reverse the trial court's order and remand this matter with instructions to grant Bank's motion for relief from the stay of litigation to allow it to satisfy its secured claim from the cash collateral.

¶2 The underlying facts are not in dispute. Pride entered into a quota share reinsurance agreement with CorePointe Insurance Company (CorePointe) in which Pride reinsured 25% of CorePointe's risk on certain business and received 25% of the collected net premiums. In return, Pride was responsible for paying CorePointe 25% of the net liability of the subject business.

¶3 Pride secured its obligations under the agreement by delivering to CorePointe an irrevocable standby letter of credit issued by Bank in the amount of $250,000. The letter of credit, issued on October 15, 2012, had an expiration date of September 14, 2013, but provided that it would be automatically extended for one year at a time unless Bank notified CorePointe at least 60 days prior to the expiration date that it would not be extended. Pride pledged a first priority security interest in its savings account at Bank as collateral for the letter of credit.

¶4 Receiver filed his application and obtained an order placing Pride into receivership on March 8, 2013. The order vested Receiver with all of Pride's property, authorized him to conduct its business, and directed him to rehabilitate Pride. It appointed Donna Wilson as Assistant Receiver. Among other things, the order directed all banks to deliver Pride's assets to Receiver. It enjoined all persons from transferring or concealing Pride's assets, and from prosecuting litigation, including making levy against assets.

¶5 On Receiver's application, the trial court entered a liquidation order on July 10, 2013. The order again included general language directing banks to deliver Pride's assets to Receiver, but it made a specific finding that Assistant Receiver had taken custody of remaining assets. It cancelled all

direct insurance policies in 31 days, and set a deadline of 180 days for the filing of claims.

¶ 6 On the same day, Assistant Receiver sent an email to Bank's president, attaching the liquidation order and directing Bank to close certain accounts and wire the funds to a specified account. However, the email also stated, "As Account [Number] . . . is collateral for the Letter of Credit, I am not requesting it to be closed at this time."

¶ 7 The deadline for notice of non-renewal of the letter of credit passed a few days later, on July 16, 2013. In the absence of any action, the letter of credit renewed on September 14, 2013 for one more year by its own terms. On September 17, 2013, Assistant Receiver directed Bank by email, "do not renew Letter of Credit [Number] and wire the funds held on deposit against the LOC to [specified account]." A few days later, Bank advised Assistant Receiver by email that in order to close the letter of credit, they would need the original letter of credit plus a directive from the beneficiary.

¶ 8 The claims filing deadline, after extensions, passed on April 7, 2014. On July 10, 2014, CorePointe drew on the letter of credit in the full amount of $250,000. Bank notified Assistant Receiver of the draw. Bank paid the draw to CorePointe on July 17, 2014, the same day that Receiver's attorney directed Bank not to pay the draw.

¶ 9 Bank then moved for relief from the stay of litigation and the liquidation order to allow it to offset the cash collateral against the amount due from Pride under the pledge agreement. Receiver objected to Bank's motion and countermoved for an order compelling return of Pride's deposit of $250,000. Receiver asserted that neither CorePointe nor Bank were creditors of Pride on the date of the liquidation order, and their rights were fixed at that time. Receiver argued that Bank had violated the trial court's order to turn over Pride's property to Receiver, and was not entitled to recover for a claim arising after the liquidation date. Receiver contended that Bank was not a secured creditor of Pride because it had no claim at all against Pride on the date of the liquidation order,

and the order itself prevented Bank from becoming a secured creditor.

¶ 10 After a hearing, the trial court denied Bank's motion and granted Receiver's motion, ordering Bank to return to Receiver the $250,000 held in Pride's account. Bank appeals from this order. Its contentions are that the trial court abused its discretion in denying its motion because (1) it is a perfected, secured creditor under the provisions of the Oklahoma Insurance Code relating to the liquidation of insurers, and (2) its payment of the letter of credit did not violate the trial court's liquidation order.

 ¶ 11 The order on appeal refuses to discharge, vacate, or modify an injunction. 12 O.S. Supp. 2013 993(A)(2). In reviewing a trial court's order granting or denying injunctive relief, we will examine and weigh the evidence, but we will not disturb the trial court's judgment unless the trial court has abused its discretion or the decision is clearly against the weight of the evidence. *Sharp v. 251st Street Landfill, Inc.*, 1996 OK 109, ¶ 4, 925 P.2d 546, 549 (overruled on other grounds by *DuLaney v. Oklahoma State Dept. of Health*, 1993 OK 113, ¶ 1, 868 P.2d 676).

 ¶ 12 Oklahoma's Insurance Code, 36 O.S. 2011 1914(A), grants authority to the Insurance Commissioner, as the court-appointed receiver, to take possession of and administer the assets of an insolvent insurer. The receiver's authority includes conducting the insurer's business. 1914(E). As receiver, the Insurance Commissioner is vested by operation of law with the title to all of the insurer's property, contracts, and rights of action, effective on the date of the court's rehabilitation or liquidation order. 1914(B). A receiver holds the property and funds coming into the receiver's hands by the same right and title as the person or entity for whose property the receiver has been appointed, subject to the liens, priorities, and equities existing at the time of the court's order. *Flynn v. Lowrance*, 1924 OK 1130, ¶ 4, 110 Okla. 150, 236 P. 594, 597. The rights of the insurer and its creditors are fixed as of the date the liquidation order is filed. 1925.

¶ 13 The Insurance Code requires that a creditor file a proof of claim in order to share in the distribution of the insurer's assets. 1918(A) and 1930. A secured creditor of an insurer in receivership may either (1) surrender the security and file a claim as a general creditor, or (2) discharge the claim by resort to the security. 36 O.S. 2011 1919(D). The claim of a secured claimant is allowable only in the amount of the deficiency between the value of the claim and the value of the security as of the date of the liquidation order, unless the claimant surrenders the security and proceeds as an unsecured creditor. 1929(D). The Insurance Code does not require that a secured creditor file a claim if the creditor intends only to proceed against the collateral without seeking payment of any unsecured portion of the debt.

¶ 14 These sections of the Insurance Code are consistent with other procedures to liquidate assets and satisfy creditors, such as those in bankruptcy or probate courts. A secured creditor may proceed against the collateral without filing a claim against the estate, but must file a claim in order to participate in the distributions to unsecured creditors. *See In re Cardin's Estate*, 1928 OK 562, ¶ 2, 132 Okla. 286, 270 P. 554, 555 ("[Creditor] did not present his claim to the administratrix within the four months time allowed by statute, but apparently was satisfied with his security."); and *In re Pajian*, 785 F.3d 1161, 1163 (7th Cir. 2015) ("But while all creditors—secured and unsecured— must file a proof of claim in order to receive distributions, a secured creditor who fails to do so can still enforce its lien through a foreclosure action, even after the debtor receives a discharge.").

¶ 15 The nature of rights and liabilities under a letter of credit is well-settled. Under Article 5 of the Uniform Commercial Code, 12A O.S. 2011 5–101 to 5–119, a letter of credit involves three parties: the applicant, the issuer, and the beneficiary. 5–102(2), (3), and (9). A letter of credit is an undertaking by an issuer to a beneficiary at the request of the applicant to honor a documentary presentation by payment or delivery of an item of value. 5–102(10). A standby letter of credit is credit on which the beneficiary makes demand only if the applicant fails to pay or perform under a contract. *First State Bank v. Diamond Plastics Corp. (Diamond Plastics)*, 1995 OK 21, n. 4, 891 P.2d 1262, 1266.

¶ 16 Letters of credit facilitate commercial transactions by substituting the issuer's credit, preferred by the beneficiary, for that of the applicant. *Id.* at 12. The issuer's liability to pay the beneficiary upon proper demand is independent of the contract between the applicant and the beneficiary. *Id.* at 15–17, 12A O.S. 2011 5–108(a) and (f). This rule, known as the "independence principle," allows the issuer to act quickly and surely upon presentment of the draft to determine only whether the demand meets the requirements of the letter of credit and not whether the beneficiary is entitled to payment from the applicant. *Diamond Plastics*, 17.

¶ 17 The issuer's obligations under the letter of credit become enforceable at the time the issuer transmits the letter of credit to the beneficiary. 12A O.S. 2011 5–106(a). When the issuer pays a draft under a letter of credit, it does so from its own assets and not from the assets of the applicant. *Matter of Compton Corp.*, 831 F.2d 586, 589 (5th Cir. 1987). A letter of credit is irrevocable unless it provides otherwise. 5–106(a). An irrevocable letter of credit may not be modified or canceled unilaterally by the issuer or the applicant. *Id.*, cmt. 1.

¶ 18 A security interest attaches to collateral when it becomes enforceable against the debtor. 12A O.S. 2011 1–9–203(a). A security interest in a deposit account becomes enforceable when (1) value has been given, (2) the debtor has rights in the collateral, and (3) the secured party has control of the deposit account pursuant to the security agreement. 1–9–203(b). A secured party has control of a deposit account if the secured party is the bank with which the deposit account is maintained. 1–9–104(a)(1). A security interest in a deposit account is perfected by such control beginning when the secured party obtains control and continuing only while the secured party retains control. 1–9–314(b).

¶ 19 In the present case, Bank acquired a security interest in the cash collateral no

later than October 15, 2012, the date it gave value by issuing the irrevocable letter of credit. Bank perfected the security interest by holding the cash collateral in a deposit account at Bank under its control. These rights and obligations were fixed as of the date of the liquidation order. Receiver acquired Pride's interest in the account subject to Bank's security interest. When Assistant Receiver notified Bank of the liquidation order, she directed Bank to close all of Pride's accounts **except** the cash collateral account, reflecting an intent to leave in place the collateral and the letter of credit, which she was authorized to do. Bank acknowledged the Assistant Receiver's authority over Pride's assets. The Assistant Receiver could only cancel the letter of credit pursuant to its own terms. She did not direct Bank to cancel the letter of credit until **after** the deadline for notifying the beneficiary, CorePointe, that the letter of credit would not be extended. The effect of missing the deadline was that the letter of credit was extended by its own terms for another year. When Core-Pointe submitted a compliant draw on the letter of credit, Bank was obligated to pay the draw. Under the pledge agreement and the Insurance Code, 36 O.S. 2011 1919(D), Bank was entitled to discharge its claim against Pride by resort to the security, regardless of whether it had timely filed a proof of claim. Therefore, the trial court abused its discretion in denying Bank's motion for relief from the stay of litigation and in requiring Bank to relinquish its perfected security interest.

¶ 20 The trial court's order is REVERSED and this matter is REMANDED with instructions to grant Bank's motion for relief from the stay of litigation to allow it to discharge its claim by resort to the security.

BUETTNER, V.C.J., P.J., and MITCHELL, J., concur.