**AMERICAN AIRLINES, INC., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

**Civ. A. No. 83–2401.**

United States District Court, D. Kansas.

June 5, 1985.

Richard N. Roe, George A. Lowe, Lowe, Terry & Roberts, Olathe, Kan., David E. Everson, Jr., Stephen J. Owens, Stinson, Mag & Fizzell, Kansas City, Mo., for plaintiff.

Michael C. Manning, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., James C. Mordy, Stanley A. Reigel, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on the motion of American Airlines, Inc., (American) for summary judgment on Count I of the complaint, and on the motion of the Federal Deposit Insurance Corporation (FDIC) for summary judgment on the entire complaint.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering such a motion, however, we must examine all evidence in the light most favorable to the party opposing the motion. *Mogle v. Sevier County School District*, 540 F.2d 478, 482 (10th Cir.1976), *cert. denied*, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1976).

Where differing inferences can be drawn from conflicting affidavits, depositions, and exhibits, summary judgment should be denied. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

There are no material facts in dispute. American entered into various lease and payment agreements with Global International Airways, Inc. (Global). To provide American with security against Global's possible default, Global requested that Indian Springs State Bank (the Bank) issue a letter of credit naming American as beneficiary. On April 21, 1983, the Bank issued Letter of Credit No. G–301 in the amount of $195,000.00, naming American as beneficiary. That letter of credit was to expire after October 21, 1983.

On October 19, 1983, Global filed a petition in bankruptcy, seeking corporate reorganization under Chapter 11. Two days later, Dick Hlinko of American's Dallas-Fort Worth, Texas, office arrived at the Bank and hand delivered the following documents: (1) the letter of credit, (2) an affidavit, (3) a sight draft in the amount of $195,000.00, and (4) a cover letter to Steven Spence, Executive Vice-President of the Bank. The Bank has admitted that Spence received the documents from American and was aware of the identity of the letter of credit on which American was seeking payment. Spence gave Hlinko a signed receipt which stated, "RECEIVED of American Airlines, Inc. one Irrevocable Letter of Credit # G–301, one sight draft for $195,-000.00, and one affidavit of unpaid sums due from Global International Airways." The sight draft delivered to Spence referred to the letter of credit as "Irrevocable Letter of Credit *G0391* dated April 21, 1983." (Emphasis added.) The cover letter, however, correctly referred to the instrument as "letter of credit no. *G–301* issued in behalf of American Airlines, Inc. by order of Global International Airways, Inc. dated April 21, 1983." (Emphasis added.)

On October 25, 1983, Spence sent a telex to Hlinko at American, refusing to honor

the sight draft for the stated reason that the draft contained a typographical error in its identification of the letter of credit's reference number. After this lawsuit was filed, the Bank was declared insolvent. FDIC took charge of the Bank's properties and assets and was substituted for the Bank as defendant in this lawsuit.

American contends that the Bank's dishonor of the sight draft was wrongful because American sufficiently complied with the requirements of the letter of credit. It argues that the apparent typographical error in the reference number on the sight draft was an immaterial defect.

FDIC argues, however, that the attempted presentment did not comply with the terms of the letter of credit in that the writing submitted as a sight draft (1) was not a draft because it failed to designate a drawee, (2) was not drawn by American as the drawer, and (3) did not refer to the correct number of the letter of credit.

Because FDIC's motion relates not only to Count I of the complaint, but also to Counts II and III, its brief addresses American's alternative arguments that FDIC waived or is estopped to assert certain defenses. Specifically, American argues that by referring *only* to the draft's erroneous letter of credit reference number in its telex of October 25, 1983, the Bank (and now FDIC) may not rely on the draft's alleged failure to designate a drawee or to indicate that it was drawn by American as the drawer.

In response to American's waiver and estoppel arguments, FDIC asserts that those doctrines apply only where a beneficiary *detrimentally relied* on an issuer's failure to state all its grounds for dishonor in its original notice thereof. No such reliance was possible here, argues FDIC, because K.S.A. 84–5–112(1)(a) expressly confers upon an issuer the right to "defer honor until the close of the third banking day following receipt of the documents." Because this draft was presented fewer than three days prior to the letter of credit's expiration date, FDIC contends that

American forfeited its right to correct any errors found to exist in its original draft.

The parties also disagree as to the standard by which we should judge FDIC's duty to honor American's draft. The relevant Kansas U.C.C. provision reads as follows:

(1) An issuer must honor a draft or demand for payment *which complies with the terms of the relevant credit* regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary.

K.S.A. 84–5–114(1) (emphasis added).

As the 1983 Kansas Comment to this provision notes, "The key question is whether the court will require 'strict compliance' and make the beneficiary meet the letter of the letter, or will allow 'substantial compliance' and thus lessen the margin within which the issuing bank is free to dishonor." The Comment further indicates that, as to this question, "Kansas law has no decisions to date." (Indeed, we have found no reported Kansas decisions concerning *any* aspect of the article on letters of credit.) Not surprisingly, FDIC urges us to hold that Kansas law requires strict compliance, while American asserts that substantial compliance with the terms of the letter of credit should suffice. As fallback positions, each party also argues that it is entitled to a judgment even if this court adopts the standard sought by its opponent.

Fortunately, we find it unnecessary to decide most of the legal questions pressed upon us by the parties. Even if (1) FDIC did not waive, and is not estopped to assert, the defenses omitted from its telex, and (2) Kansas would adopt the strict compliance standard, American is nonetheless entitled to a judgment as a matter of law. Our reasoning turns on a proper understanding of the phrase "strict compliance."

The term "strict compliance" is not so absolute as FDIC would wish. In a leading decision, the First Circuit explained:

We take as a starting point the substantial body of case law which establishes

and supports the general rule that documents submitted incident to a letter of credit are to be strictly construed. This is because international financial transactions rest upon the accuracy of documents rather than on the condition of the goods they represent. But we note some leaven in the loaf of strict construction. Not only does *haec verba* not control absolutely, but some courts now cast their eyes on a wider scene than a single document. We are mindful, also, of the admonition of several legal scholars that the integrity of international transactions (i.e., rigid adherence to material matters) must somehow strike a balance with the requirement of their fluidity (i.e., a reasonable flexibility as to ancillary matters) if the objective of increased dealings to the mutual satisfaction of all interested parties is to be enhanced.

*Banco Espanol de Credito v. State Street Bank & Trust Co.*, 385 F.2d 230, 234 (1st Cir.1967) (citation omitted). Subsequent decisions have heeded the teachings of *Banco Espanol.* While expressly applying the strict compliance standard, the First Circuit held that "a variance between documents specified and documents submitted is not fatal if there is *no* possibility that the documents could mislead the paying bank to its detriment." *Flagship Cruises, Ltd. v. New England Merchants National Bank of Boston,* 569 F.2d 699, 705 (1st Cir.1968) (emphasis in original). This same standard was applied in the more recent strict compliance cases of *Tosco Corp. v. F.D.I.C.,* 723 F.2d 1242, 1247–48 (6th Cir. 1983), and *U.S. Industries, Inc. v. Second New Haven Bank,* 462 F.Supp. 662, 665 (D.Conn.1978).

In the case at hand, we conclude that there was *no* possibility that the Bank could have been misled by the documents submitted to it by American. Even under the rule of strict compliance, a beneficiary may establish compliance with the terms of a letter of credit via documents submitted in conjunction with the disputed draft. *U.S. Industries,* 462 F.Supp. at 664. Here, the documents submitted along with American's draft clearly indicated the correct letter of credit reference number and the proper drawee (the Bank).

While those accompanying documents also revealed that "B.W. Baldwin, Assistant Vice President, Aircraft Sales and Services" had signed the draft as American's agent, no such documentation was even necessary. Under K.S.A. 84–3–403(1), "[a] signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation." As the Comment to this provision notes, "when relevant [,] parol evidence is admissible to prove or to deny" such authority. FDIC does not dispute that, if it were admitted, parol evidence would establish Mr. Baldwin's authority to sign this draft on American's behalf. Accordingly, the draft did strictly comply with the letter of credit's requirement that any drafts be submitted by American.

The undisputed facts indicate that, as to Count I of its complaint, American is entitled to a judgment as a matter of law. We will thus grant its motion for summary judgment on that Count. As American stated in its brief, "Judgment in favor of plaintiff under any one of the counts would dispose of the entire action." Accordingly, Counts II and III of the complaint will now be dismissed as moot. FDIC's motion for summary judgment must, of course, be denied.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment on Count I of the complaint is granted.

IT IS FURTHER ORDERED that Counts II and III of the complaint are dismissed as moot.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on the complaint is denied.

Counsel for plaintiff are directed to prepare a proposed journal entry of judgment, to circulate said proposal to opposing counsel, and then to submit it for the court's approval.