(97 P.3d 505)
No. 90,998

CARTER PETROLEUM PRODUCTS, INC., *Appellee,* v.
BROTHERHOOD BANK & TRUST COMPANY, *Appellant.*

Opinion filed September 17, 2004.

*Kurt S. Brack*, of Holbrook & Osborn, P.A., of Overland Park, for appellant.

*Matthew R. Hale*, of Polsinelli Shalton & Welte, P.C., of Kansas City, Missouri, for appellee.

Before GREEN, P.J., PIERRON and MALONE, JJ.

GREEN, J.: This action involves a bank's wrongful refusal to honor a letter of credit. Carter Petroleum Products, Inc. (Carter) sued Brotherhood Bank & Trust Company (Bank) for its failure to honor a letter of credit. The Bank appeals from a judgment of the trial court granting summary judgment in favor of Carter on the letter of credit. On appeal, the Bank contends that the untimely presentment of the letter of credit and the noncompliance of the submitted documents with the letter of credit relieved the Bank of its duty to honor the letter of credit. We disagree and affirm.

Carter is in the petroleum business and sells fuel products to Highway 210, LLC (Highway 210), which operates a gas station. Highway 210 is also a customer of the Bank. On October 19, 2001, the Bank issued a letter of credit, No. 2001-270, in the aggregate amount of $175,000, for the benefit of Carter on the account of Highway 210.

By its terms, the letter of credit authorized Carter to draw on the Bank on the account of Highway 210, to the aggregate amount

of $175,000 available by Carter's draft at sight accompanied by the following document: "STATEMENT SIGNED BY CARTER PETROLEUM PRODUCTS STATING THAT HIGHWAY 210, LLC HAS FAILED TO PAY OUTSTANDING INVOICES IN ACCORDANCE WITH TERMS OF PAYMENT."

The letter of credit further provided that "[e]ach draft must state that it is 'Drawn under Brotherhood Bank & Trust Company's Letter of Credit #2001-270 dated July 26, 2001.' This credit must accompany the draft(s)." The date of "July 26, 2001" in the aforementioned quotation was a typographical error because the letter of credit at issue was dated October 19, 2001. This letter of credit was a renewal of one of a series of previous letters of credit which were referenced in the lower margin of the letter of credit. The October letter of credit replaced the letter of credit dated July 26, 2001, in the amount of $125,000.

Additionally, the letter of credit stated "that all draft(s) drawn under and in compliance with the terms of this credit will be duly honored on delivery of documents as specified if presented at this office in Shawnee, KS no later than June 26, 2002." The letter of credit was also subject to the Uniform Customs and Practice for Documentary Credits, International Chamber of Commerce Publication No. 500 (1993 Revision) (UCP).

Hal O'Donnell, Carter's credit manager, delivered a draft request to the Bank for payment on June 26, 2002. Carter's draft request contained the following statement:

"Pursuant to the terms stated in the Letter of Credit #2001-270 dated October 19, 2001 (copy attached), Carter Petroleum Products, Inc., hereby exercises its option to draw against said Brotherhood Bank and Trust Company's Letter of Credit in the amount of $175,000 due to non-payment of invoices in accordance with terms of payment (copies also attached)."

The account name listed on the draft request was Highway 210 Texaco Travel Plaza, LLC, not Highway 210, LLC, as listed on the letter of credit. In addition, the draft request contained a statement that Highway 210 had failed to pay outstanding invoices and contained a statement that Carter was exercising its rights under the letter of credit. Carter's draft request was accompanied by the let-

ter of credit and copies of Carter's outstanding invoices to Highway 210.

O'Donnell arrived at the Bank at approximately 5 p.m. on June 26, 2002, to present the draft request. When O'Donnell arrived at the Bank, the lobby doors were locked, but after O'Donnell knocked on the door, an employee of the Bank admitted O'Donnell into the lobby. O'Donnell indicated he was there to see Ward Kerby, the assistant vice president of the Bank. Upon meeting Kerby, O'Donnell handed him the draft request accompanied by the letter of credit and unpaid Carter invoices of Highway 210. The draft request was then stamped received on June 26, 2002, and was signed by Kerby with a notation that it was received at 5:05 p.m.

When O'Donnell delivered Carter's draft request to the Bank, the drive-through window was still open for business. O'Donnell maintained that had the employee of the Bank not opened the lobby, he would have delivered the draft request along with the attachments to the drive-through window attendant.

June 26, 2002, was a Wednesday. There is no dispute that the lobby of the Bank closed at 5 p.m. on Wednesdays. Similarly, there is no dispute that the drive-through lane at the Bank was open until 7 p.m. on Wednesdays. Additionally, inside the Bank there were several signs which alerted customers that any transactions occurring after 2 p.m. would be posted on the next business day.

The Bank dishonored Carter's draft request on the letter of credit on June 28, 2002. The Bank's dishonor notice stated two reasons: (1) The draft request was presented to the Bank after regular banking hours of the Bank on the date the letter of credit expired, and (2) the request failed to contain the specific language required by the letter of credit: "Drawn under Brotherhood Bank & Trust Company's Letter of Credit #2001-270 dated July 26, 2001."

Carter sued the Bank for its failure to honor the letter of credit. Both parties moved for summary judgment. The trial court ruled in favor of Carter and granted its motion for summary judgment. The Bank requested time to conduct further discovery concerning Highway 210's current debt to Carter. Carter furnished

the Bank's counsel with copies of documents including an acknowledgment by Highway 210 that its debt to Carter exceeded the $175,000 face amount of the letter of credit. Later, the trial court entered its judgment in favor of Carter in the amount of $175,000, plus interest, costs, and attorney fees.

The Bank first maintains that the trial court erred in granting Carter's motion for summary judgment. The standard of review on an appeal from a trial court's ruling on a motion for summary judgment is well established and need not be repeated. See *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

On appeal, the Bank relies on two theories. First, the Bank contends that the attempted presentment of the draft request was untimely. The Bank makes two separate arguments. It argues that the presentment was untimely either because it occurred past 2 p.m. and, thus, should be considered on the next day's business or because the presentment occurred past 5 p.m., after the regular banking hours of the Bank. Second, the Bank argues that the draft request did not strictly comply with the terms of the letter of credit.

Letters of credit are governed by Article 5 of the Uniform Commercial Code (UCC), K.S.A. 84-5-101 *et seq*. The pertinent statute is K.S.A. 84-5-108. It states, in relevant part:

"(a) Except as otherwise provided in K.S.A. 84-5-109, an issuer shall honor a presentation that, as determined by the standard practice referred to in subsection (e), appears on its face strictly to comply with the terms and conditions of the letter of credit. Except as otherwise provided in K.S.A. 84-5-113 and unless otherwise agreed with the applicant, an issuer shall dishonor a presentation that does not appear so to comply.

. . . .

"(e) An issuer shall observe standard practice of financial institutions that regularly issue letters of credit. Determination of the issuer's observance of the standard practice is a matter of interpretation for the court. The court shall offer the parties a reasonable opportunity to present evidence of the standard practice."

Strict compliance and standard practice are explained in the Official UCC Comment 1 to K.S.A. 84-5-108. The comment states:

"The standard of strict compliance governs the issuer's obligation to the beneficiary and to the applicant. By requiring that a 'presentation' appear strictly to comply, the section requires not only that the documents themselves appear on their face strictly to comply, but also that the other terms of the letter of credit

such as those dealing with the time and place of presentation are strictly complied with. . . .

. . . .

"The section adopts strict compliance, rather than the standard that commentators have called 'substantial compliance[.]' . . . Strict compliance does not mean slavish conformity to the terms of the letter of credit. For example, standard practice (what issuers do) may recognize certain presentations as complying that an unschooled layman would regard as discrepant. . . .

"Identifying and determining compliance with standard practice are matters of interpretation for the court, not for the jury. . . . Granting the court authority to make these decisions will also encourage the salutary practice of courts' granting summary judgment in circumstances where there are no significant factual disputes."

The Kansas Comment to K.S.A. 84-5-108, as it pertains to strict compliance and standard practice, mirrors the sentiments presented in the official comment.

Turning first to the issue of timeliness, we notice that there is no dispute that the letter of credit was subject to the UCP. Both parties agree that Article 45 of the UCP provides that "[b]anks are under no obligation to accept presentation of documents outside their banking hours."

Letters of credit are governed by the rules applicable to the construction of ordinary contracts. *Sports, Inc. v. The Sportshop, Inc.*, 14 Kan. App. 2d 141, 142, 783 P.2d 1318 (1989). The document must be construed from its four corners and all provisions must be considered together and not in isolation. When an ambiguity appears in a document, the language is construed against the party who prepared the instrument. *Amoco Production Co. v. Wilson, Inc.*, 266 Kan. 1084, 1088, 976 P.2d 941 (1999). In the instant case, the Bank prepared the letter of credit.

The letter of credit first stated that $175,000 was available by Carter's draft at "sight" accompanied by certain documents. It then stated that the letter of credit would be honored "if presented at this office in Shawnee, KS no later than June 26, 2002." The only office referred to in the letter of credit is the Bank's office at 7499 Quivira, Shawnee, Kansas.

O'Donnell arrived at the Bank just after 5 p.m., and the lobby was closed. The drive-through window at the Bank, located at 7499

Quivira, was still open. The letter of credit made no reference that the sight draft must be presented before the lobby closed on June 26, 2002. Similarly, it did not state that the draft needed to be presented before 2 p.m. or before 5 p.m. The letter of credit did not state that the draft needed to be presented to a loan officer, a vice president, or any particular person. The letter of credit simply stated that the money was available by draft at "sight" and would be honored "if presented at this office in Shawnee, KS no later than June 26, 2002."

Under the rules of construction, the presentment of the draft did comply with the requirements set forth for the time and place of presentment. The draft was presented at the Bank on June 26, 2002, at a time when the Bank was still open for business. Although the lobby was closed, by the terms of the letter of credit, anyone working at the Bank was authorized and could have accepted the draft, including the drive-through teller who was open for business.

Although the Bank may have intended to limit the presentment of a sight draft to either before 2 p.m. or 5 p.m. on June 26, 2002, the Bank did not specify in the letter of credit that presentment was to be conducted in this way. This was the source of the confusion; other than the date, no specific time of day was mentioned as to when it must be presented. For example, the letter of credit could have stated that it must be presented "no later than 5 p.m., June 26, 2002, at which date and time the letter of credit expires." The letter of credit failed to contain such language or any similar language to that effect. "Any ambiguity in a letter of credit must be resolved against the party drafting it." *East Girard Sav. Ass'n v. Citizens Nat. Bank & Trust Co. of Boytown*, 593 F.2d 598, 602 (5th Cir. 1979). The Bank was the sole drafter of the letter of credit. Accordingly, if the Bank wanted more specificity as to when and where Carter had to make presentment, the Bank could have included such provisions in its letter of credit. The ambiguities or lack of explicitness in the letter of credit stemmed from the Bank's own pen. As a result, the Bank's argument fails.

Next, we must consider whether the draft request strictly complied with the terms of the letter of credit. When documents comply with the terms of the letter of credit so that a bank is forced

to pay the draft is a difficult legal question. The UCC furnishes no easy answer to this question.

The Bank was to make funds available to Carter under its sight draft when it was accompanied by a "statement signed by Carter Petroleum Products stating that Highway 210, LLC has failed to pay outstanding invoices in accordance with terms of payment."

Additionally, the letter of credit required that "[e]ach draft must state that it is 'Drawn under Brotherhood Bank & Trust Company's Letter of Credit #2001-270 dated July 26, 2001.' This credit must accompany the draft(s)."

On June 26, 2002, Carter presented to the Bank a sight draft in the amount of $175,000. The account name on the draft was Highway 210 Texaco Travel Plaza, LLC. The draft contained the following statement:

"Pursuant to the terms stated in the Letter of Credit #2001-270 dated October 19, 2001 (copy attached), Carter Petroleum Products, Inc., hereby exercises its option to draw against said Brotherhood Bank and Trust Company's Letter of Credit in the amount of $175,000 due to non-payment of invoices in accordance with terms of payment (copies also attached)."

The draft was accompanied by the letter of credit and Carter's outstanding invoices to Highway 210.

On appeal, the Bank contends that the demand was not in strict compliance because (1) the draft request stated the account name as "Highway 210 Texaco Travel Plaza, LLC," not "Highway 210, LLC," and (2) the draft request did not contain the exact language from the letter of credit.

In support of its contentions, the Bank cites *American Coleman v. Intrawest Bank of Southglenn*, 887 F.2d 1382 (10th Cir. 1989). The defendant bank in *Coleman* was to make funds available to plaintiff under its sight drafts to be accompanied by the " '[o]riginal Letter of Credit and your signed written statement that Jim Gammon and Associates is in default on the Note and Security Agreement dated November 21, 1984, between American Coleman and Jim Gammon and Associates.' " 887 F.2d at 1383. Plaintiff tendered to the bank a sight draft with the following attached statement: "[T]he American Coleman Company informs you that Jim Gammon and Associates is in default on the Note and Security

Agreement dated November 21, 1984, *and the Promissory Note dated November 16, 1984,* between American Coleman and Jim Gammon and Associates." (Emphasis added.) 887 F.2d at 1384.

The bank dishonored the draft. In finding in favor of the bank, the trial judge stated:

"In the present case, it is clear that [plaintiff's] request for payment presented November 13, 1986, was not in technical or literal compliance with the terms of the letter of credit. [Plaintiff's] reference to two different notes could easily have caused the bank's documents examiner some confusion. Accordingly, because I conclude that the rule of strict compliance, as it is applied in Colorado, requires literal compliance with the terms and requirements set forth in the letter of credit, and there was no such literal compliance in this case." 887 F.2d at 1385.

In affirming the decision of the trial court, the Tenth Circuit Court of Appeals stated:

"While it is apparent from the cases that minute discrepancies which could not possibly mislead a document examiner are usually disregarded, this does not constitute a retreat from the strict compliance standard applicable in this case inasmuch as the district court found that '[plaintiff's] reference to two different notes could easily have caused the bank's documents examiner some confusion.'" 887 F.2d at 1386.

The *Coleman* court then held that the trial court did not err in applying the strict compliance standard. 887 F.2d at 1386. In rejecting plaintiff's argument that reference to the second note was mere surplusage, the *Coleman* court declared:

"The apparent existence of two promissory notes supports the district court's finding that Bank could have been misled by [plaintiff's] November 13, 1986, draft. [Plaintiff's] contention that Bank could not have been misled by the draft because Bank drafted the letter of credit is without support in this record." 887 F.2d at 1386-87.

Thus, the *Coleman* court's decision was largely based upon whether the defendant bank could have been misled by the discrepancy in the draft.

In *American Airlines, Inc. v. Federal Deposit Ins.*, 610 F. Supp. 199 (D. Kan. 1985), a bank had issued a letter of credit No. G-301, to American Airlines, Inc. (American). Unfortunately, American delivered a sight draft to the bank referring to the letter of credit No. G0391. The cover letter, however, correctly referred to the

letter of credit as G-301. The bank refused to pay on the letter of credit. The bank maintained that the typographical error on the sight draft indicated that American had failed to strictly comply with the terms of the letter of credit. As a result, American was not entitled to payment.

In ruling in favor of American, the *American Airlines* court stated:

"In the case at hand, we conclude that there was no possibility that the Bank could have been misled by the documents submitted to it by [plaintiff]. Even under the rule of strict compliance, a beneficiary may establish compliance with the terms of a letter of credit via documents submitted in conjunction with the disputed draft. [Citation omitted.] Here, the documents submitted along with [plaintiff's] draft clearly indicated the correct letter of credit reference number and the proper drawee (the Bank)." 610 F. Supp. at 202.

Because the bank could not have been misled, even with the typographical error, the *American Airlines* court determined that the documents did strictly comply with the terms of the letter of credit. As a result, American was entitled to payment. 610 F. Supp. at 202.

In the instant case, although the draft request submitted by Carter was not in complete conformity with the letter of credit issued by the Bank, it did contain all the necessary information requested by the letter of credit. Moreover, the Bank could not have been misled by the nonconformity.

Although the draft request listed the account name as "Highway 210 Texaco Travel Plaza, LLC," not "Highway 210, LLC" as requested in the letter of credit, the draft request was accompanied by the letter of credit which properly named the account. Obviously, there was no confusion caused by the different name referred to in the draft request because the Bank did not rely on this ground in rejecting the letter of credit. Moreover, the Bank failed to raise this particular argument before the trial court. Issues not raised before the trial court cannot be raised on appeal. *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003).

The draft request also contained all of the other pertinent information requested in the letter of credit. The letter of credit

accompanied the draft, the draft stated it was drawn under Brotherhood Bank and Trust Company's letter of credit, and the draft contained the correct letter of credit number: #2001-270. Additionally, as required by the letter of credit, the draft stated that Carter was exercising its option to draw against the Bank due to nonpayment of invoices in accordance with the terms of payment.

The draft request differed from the requirements stated in the letter of credit in that the letter of credit mistakenly referred to the letter of credit dated July 26, 2001. In its draft request, Carter properly referred to the letter of credit dated October 19, 2001. Had Carter referred to the incorrect date as specified in the letter of credit, it would have been likely to cause confusion on the part of the Bank because the October 19, 2001, letter of credit was for a different amount and superceded the July 26, 2001, letter of credit. As a result, the Bank's argument fails.

Next, the Bank argues that the trial court erred when it failed to allow more time for discovery on the issue of the exact amount owed by Highway 210 to Carter at the time of the judgment. A trial court has broad discretion regarding the control and conduct of discovery in civil cases; such rulings will be reversed only upon a clear showing of that abuse of discretion. *Butler v. HCA Health Svcs. of Kansas, Inc.*, 27 Kan. App. 2d 403, 423-24, 6 P.3d 871, *rev. denied* 268 Kan. 885 (1999).

At the conclusion of the hearing on the motions for summary judgment, the Bank requested time to conduct further discovery concerning Highway 210's current debt to Carter. Carter offered to submit an affidavit and offered to allow the Bank to depose Carter's credit manager. Carter voluntarily furnished the Bank's counsel with copies of documents including an acknowledgment by Highway 210 that its debt to Carter exceeded the $175,000 face amount of the letter of credit. The Bank failed to conduct any more discovery. Later, the Bank asked that it be allowed to conduct discovery on the issue of how much money Highway 210 owed to Carter.

The Bank had well over a month to conduct any sort of discovery it needed to conduct and has given neither the trial court nor this court any valid reason why this was not done. Additionally, Carter

furnished the Bank with at least a portion of the information it requested.

Nevertheless, the Bank's liability to Carter under the letter of credit was not conditioned on Highway 210's debt to Carter. Rather, the Bank's liability was only conditioned on Carter tendering a draft request in accordance with the letter of credit. If proper presentment is made, K.S.A. 84-5-108(a) requires the issuer (Bank) to honor or make payment under the letter of credit. Highway 210's underlying obligation to Carter was irrelevant to the Bank's obligation to pay under the letter of credit. A possible windfall for Carter was irrelevant, and as long as the terms of the letter of credit were complied with, Carter was entitled to payment. As a result, the Bank's argument fails.

Affirmed.